EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| José M. Toro Cruz<br>  Peticionario<br><br>         v.<br><br>Policía de Puerto Rico<br>  Recurrida | CC-2002-109 | Certiorari<br><br>2003 TSPR 67<br><br>159 DPR ____ |
| Juan Nieves Vázquez<br>  Peticionario<br><br>         v.<br><br>Policía de Puerto Rico<br>  Recurrida | AC-2002-11 | |
| Ricardo Colón Ortiz<br>  Recurrido<br><br>         v.<br><br>Policía de Puerto Rico<br>  Peticionaria | CC-2002-258 | |

Fecha : 24 de abril de 2003

**Número del Caso: CC-2002-109**

Tribunal de Circuito de Apelaciones:
                    Circuito Regional I

Juez Ponente:
                    Hon. José M. Aponte Jiménez

Abogado de la Parte Peticionaria:
                    Lcdo. José Miguel Toro Iturrino

Oficina del Procurador General:
                    Lcda. Lizette Mejías Avilés
                    Procuradora General Auxiliar

**Número del Caso: AC-2002-11**

Tribunal de Circuito de Apelaciones:
                        Circuito Regional I

Panel integrado por su Presidente, el Juez González Román, y los Jueces Aponte Jiménez y Sánchez Martínez

Abogado de la Parte Peticionaria:
                        Lcdo. Alfredo E. González Vega

Oficina del Procurador General:
                        Lcda. Lizette Mejías Avilés
                        Procuradora General Auxiliar

**Número del Caso: CC-2002-258**

Tribunal de Circuito de Apelaciones:
                        Circuito Regional I

Juez Ponente:
                        Hon. Charles A. Cordero Peña

Oficina del Procurador General:
                        Lizette Mejías Avilés
                        Procuradora General Auxiliar

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

| José M. Toro Cruz | * | | * | |
| Peticionario | * | | * | |
| v. | * | CC-2002-109 | * | Certiorari |
| Policía de Puerto Rico | * | | * | |
| Recurrida | * | | * | |
| Juan Nieves Vázquez | * | | * | |
| Peticionario | * | | * | |
| v. | * | AC-2002-11 | * | Certiorari |
| Policía de Puerto Rico | * | | * | |
| Recurrida | * | | * | |
| Ricardo Colón Ortiz | * | | * | |
| Recurrido | * | | * | |
| v. | * | CC-2002-258 | * | Certiorari |
| Policía de Puerto Rico | * | | * | |
| Peticionaria | * | | * | |

Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.

En San Juan, Puerto Rico, a 24 de abril de 2003.

La controversia principal que presentan los recursos ante nos es la siguiente: **si previo a una determinación de cesantear a un miembro de la Policía de Puerto Rico que está acogido a los beneficios del Fondo del Seguro del Estado, una vez ha transcurrido el período de doce (12) meses dispuesto por el artículo 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo[1] para la reinstalación en el empleo, es necesario que se agoten los**

---

[1] Ley Núm. 45 del 18 de abril de 1935, 11 L.P.R.A. sec. 7.

**remedios dispuestos por el artículo 18 de la Ley de la Policía de Puerto Rico de 1996.**[2]

I

**CC-2002-109**

El señor José M. Toro Cruz trabajaba para la Policía de Puerto Rico como agente. El 21 de noviembre de 1994, el señor Toro Cruz se reportó al Fondo del Seguro del Estado (en adelante F.S.E.), luego de sufrir un accidente mientras desempeñaba sus funciones como agente de la Policía de Puerto Rico. Después de realizarle el examen médico inicial, el F.S.E. determinó que el señor Toro Cruz tenía que recibir tratamiento médico en descanso.

El 18 de septiembre de 1996, el Superintendente de la Policía de Puerto Rico le informó al señor Toro Cruz, mediante comunicación escrita, su intención de cesantearlo y sobre su derecho a solicitar una vista informal ante un oficial examinador. Apoyó lo actuado, en la facultad que le confiere el artículo 4 de la Ley de la Policía de Puerto Rico de 1996[3] y en lo dispuesto en el artículo 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, supra, para cesantear a un empleado en los casos en que el término de reserva de empleo de doce (12) meses ha expirado.

El 6 de diciembre de 1996, conforme fuera solicitado por el señor Toro Cruz, se celebró una vista administrativa ante un oficial examinador.[4] Posteriormente, el 19 de febrero de 1997, el Superintendente de la Policía de Puerto

---

[2] Ley Núm. 53 del 10 de junio de 1996, 25 L.P.R.A. sec. 3117.

[3] 25 L.P.R.A. sec. 3103.

[4] Apéndice del recurso de Certiorari, pág. 37.

Rico le notificó al señor Toro Cruz su determinación de cesantearlo de su puesto definitivamente, toda vez que alegadamente su condición física no le permitía desempeñar adecuadamente los deberes de su cargo en la Policía de Puerto Rico.[5]  Para esta fecha, el F.S.E. aún no había decretado el alta definitiva de dicho agente.

Insatisfecho con la referida determinación, el 2 de abril de 1997, el señor Toro Cruz acudió en apelación ante la Junta de Apelaciones del Sistema de Personal (en adelante J.A.S.A.P.), impugnando la determinación del Superintendente de la Policía de cesantearlo de su puesto como agente. Alegó, que dicho funcionario no "agotó el remedio vigente de un puesto de acomodo para el apelante".[6]

El 20 de enero de 2001, J.A.S.A.P. emitió resolución dejando sin efecto la cesantía del apelante, señor Toro Cruz, por lo que ordenó su reinstalación a fin de que se diera cumplimiento al procedimiento establecido en el artículo 18 de la Ley de la Policía de Puerto Rico de 1996, supra.  Determinó, que el artículo 5a de la Ley de Sistema de Compensaciones por Accidentes del Trabajo, supra, no aplica automáticamente y que dicho precepto debe ser armonizado con el artículo 18 de la Ley de la Policía de Puerto Rico de 1996, supra.[7]  Concluyó, además, que **la intención del legislador al aprobar el referido artículo fue proveer a los miembros de la Policía de Puerto Rico un procedimiento que incluya alternativas —como retiro con pensión, acomodo razonable o período de descanso— previo a la aplicación del mecanismo de reserva de empleo establecido**

---

[5] Íd., pág. 40.

[6] Íd., págs. 42-43.

[7] Íd., pág. 30.

**en el artículo 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, <u>supra</u>.**

El Procurador General, en representación de la Policía de Puerto Rico, acudió ante el Tribunal de Circuito de Apelaciones, mediante solicitud de revisión de la determinación de J.A.S.A.P. El 21 de diciembre de 2001, el Tribunal de Circuito de Apelaciones emitió sentencia revocando la resolución recurrida. A esos efectos, determinó lo siguiente:

> **Los doce (12) meses para reservar el empleo de un agente reportado al Fondo comienzan desde la fecha del accidente, independientemente de las gestiones que tenga que realizar la Policía para proveer a sus miembros acomodo razonable o reubicación en otro puesto cuando éstos sufren una lesión grave o leve en el empleo por un periodo prolongado, pero que no los incapacite, o las relacionadas al retiro con pensión en casos de incapacidad permanente.**[8] (Énfasis nuestro.)

Inconforme con la precitada determinación, el señor Toro Cruz acudió ante este foro, señalando la comisión de los errores siguientes:

> Primer Error:
>
> Cometió error el Tribunal de Circuito de Apelaciones al revocar la resolución emitida por la Junta de Apelaciones del Sistema de Administración de Personal, a pesar de que en el caso del apelante recurrente José M. Toro Cruz, la Junta Médica de la Policía de Puerto Rico determinó que el lesionado podía realizar sus funciones como policía; y el Superintendente de la Policía haciendo caso omiso a esa determinación refirió al apelante al retiro.
>
> Segundo Error:
>
> Cometió error el Tribunal de Circuito de Apelaciones al interpretar la nueva Ley de la Policía en una forma tal que violenta los derechos constitucionales y estatutarios que le han sido reconocidos a estos empleados públicos.

II

---

[8] Íd., pág. 20.

**AC-2002-11**

El señor Juan Nieves Vázquez, trabajó para la Policía de Puerto Rico como agente adscrito al área de Transportación y Grúas de la Comandancia del área de Bayamón. El 9 de octubre de 1997, se reportó enfermo al F.S.E., debido a que, alegadamente, el 9 de septiembre de ese año había sufrido un accidente del trabajo mientras reparaba un vehículo oficial. El F.S.E. ordenó su descanso.[9] Posteriormente, el 1 de octubre de 1998, el F.S.E. le otorgó al señor Nieves Vázquez un certificado de alta definitiva sin incapacidad, con el cual acudió a la Policía de Puerto Rico tres (3) días después.

Así las cosas, el 19 de enero de 1999, el Superintendente le notificó por escrito al señor Nieves Vázquez su intención de cesantearlo de su puesto en la Policía de Puerto Rico. Además, se le advirtió de su derecho a solicitar una vista administrativa en la que podría exponer la evidencia que poseyera, si alguna, y las razones por las cuales no debía tomar la determinación aludida.[10]

El 6 de agosto de 1999, a petición del señor Nieves Vázquez, se celebró una vista administrativa, a base de la cual la oficial examinadora rindió un informe concluyendo que el señor Nieves Vázquez podía ser cesanteado, por haberse ausentado de su puesto por un término de más de doce (12) meses, contados a partir de la fecha de su accidente. Específicamente, la oficial examinadora concluyó lo siguiente:

---

[9] Relación de hechos según relatados en el Informe del Oficial Examinador.

[10] Apéndice del recurso de <u>Certiorari</u>, pág. 44.

Es el Superintendente de la Policía la persona autorizada en la Ley para cesar a un empleado de su puesto cuando éste se encuentre ausente de sus funciones por un término mayor de doce (12) meses contados a partir de la fecha del accidente, como lo es el caso de autos, es por ello que ha sido nuestra recomendación la cesantía del peticionario.[11]

De conformidad con la referida recomendación, el 13 de diciembre de 1999, el Superintendente de la Policía de Puerto Rico determinó cesantear al señor Nieves Vázquez del puesto que ocupaba como agente de esa agencia.

Por no estar satisfecho con esa determinación, el señor Nieves Vázquez acudió en apelación ante J.A.S.A.P. impugnando la determinación del Superintendente. El 27 de marzo de 2001, J.A.S.A.P. emitió resolución declarando ha lugar la apelación. **Señaló, que la Ley de la Policía de Puerto Rico de 1996, <u>supra</u>, establece los derechos que cobijan a un miembro de la Policía que sufre un accidente de trabajo y se encuentra acogido a la Ley de Compensaciones por Accidentes del Trabajo, <u>supra</u>. En ese sentido, expresó que la Ley de la Policía de Puerto Rico, <u>supra</u>, fue aprobada con el propósito de beneficiar al miembro de la Policía que sufre un accidente del trabajo, de manera que se le provea la posibilidad de acogerse al retiro con pensión, acomodo razonable o período de descanso previo a una determinación de la Policía de cesantearlo de su puesto.** Es por ello que concluyó:

Es evidente que al aprobarse la Ley Núm. 53, supra, [Ley de la Policía de Puerto Rico de 1996] el legislador quiso establecer un mecanismo particular para los miembros de la fuerza policíaca que sufren accidentes del trabajo. De forma muy detallada la referida legislación contempló diferentes posibilidades que podrían ocurrir una vez un miembro de la fuerza sufriera un accidente del trabajo. Por supuesto contempló también el remedio que tendría el miembro de la

---

[11] Apéndice del recurso de <u>Certiorari</u>, pág. 56.

fuerza que se encontrara en esas situaciones. Si ello es así no vemos cómo pueda pretenderse el que aplique automática y exclusivamente la disposición de reserva de empleo de la Ley Núm. 45, supra, [Ley del Sistema de Compensaciones por Accidentes del Trabajo] sin que el miembro de la Fuerza haya sido sometido a los mecanismos particulares de la Ley de la Policía de Puerto Rico, creados específicamente para dichas situaciones.[12]

Finalmente, determinó que las disposiciones de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, supra, en particular el Artículo 5a sobre reserva de empleo, no aplican automática y exclusivamente, y que las mismas debían ser armonizadas con lo dispuesto en el artículo 18 de la Ley de la Policía de Puerto Rico de 1996, supra. Por lo tanto, ordenó que se dejara sin efecto la cesantía del señor Nieves Vázquez, y que se diera cumplimiento al procedimiento establecido en la Ley de la Policía de Puerto Rico de 1996, supra.[13]

Inconforme con dicha determinación, el 26 de abril de 2001, la Policía de Puerto Rico acudió, mediante solicitud de revisión, ante el Tribunal de Circuito de Apelaciones. Dicho foro revocó la determinación de J.A.S.A.P., al concluir que nada en el texto de la Ley de la Policía de Puerto Rico, supra, tiene el ánimo de "imponer límites a las prerrogativas que puede ejercer la Policía de Puerto Rico como patrono otorgadas por la Ley del Sistema de Compensaciones por Accidentes del Trabajo".[14] Señaló, además, que:

> **[E]l hecho de que la Ley de la Policía de 1996, específicamente en su Artículo 18, establezca un procedimiento específico en casos de accidentes del trabajo, no significa que el perjudicado pueda obviar el requisito de la ley sombrilla, Ley del**

---

[12] Apéndice del recurso de Certiorari, pág. 11.

[13] Íd.

[14] Íd., págs. 8-9.

**Sistema de Compensaciones por Accidentes del Trabajo, a los efectos de que la solicitud de reposición "se haga dentro de los doce (12) meses de haber ocurrido el accidente o enfermedad".** (Énfasis nuestro.)

Toda vez que el señor Nieves Vázquez no solicitó la reinstalación dentro del término aludido, el Tribunal de Circuito Apelaciones concluyó que la determinación de cesantearlo fue correcta. De dicha determinación, el señor Nieves Vázquez acudió ante este Tribunal, mediante escrito titulado "Apelación", señalando la comisión del siguiente error:

> ERRO EL TRIBUNAL DE CIRCUITO DE APELACIONES AL RESOLVER QUE LA DETERMINACION DE LA POLICIA DE PUERTO RICO DE CESANTEAR AL APELANTE-RECURRIDO FUE CORRECTA, BASADA EN LAS DISPOSICIONES DEL ART. 5(A) DE LA LEY DE COMPENSACIONES POR ACCIDENTES DEL TRABAJO, SIN SOMETER AL LESIONADO AL PROCEDIMIENTO ESTABLECIDO EN EL ARTICULO 18 DE LA LEY DE LA POLICIA DE 1996.

### III

### CC-2002-258

El señor Ricardo Colón Ortiz trabajaba para la Policía de Puerto Rico como agente. El 16 de noviembre de 1997, se reportó al F.S.E., por razón de haber sufrido un accidente mientras desempeñaba sus labores en el trabajo. Luego de ser evaluado en el F.S.E., se le recomendó tratamiento en descanso. El 22 de enero de 1998, el F.S.E. certificó que el señor Colón Ortiz continuaba recibiendo tratamiento y la relación de su caso.[15]

Así las cosas, el 21 de enero de 1999, el Superintendente de la Policía de Puerto Rico le notificó al señor Colón Ortiz su intención de cesantearlo de su puesto y del derecho que le asistía a solicitar una vista

---

[15] Relación de hechos según relatada en el informe emitido por el oficial examinador.

administrativa.[16]  En vista de lo anterior, el señor Colón
Ortiz procedió a solicitar una vista administrativa ante un
oficial examinador, la cual se celebró el 30 de junio de
1999.  El día anterior, es decir, el 29 de junio de ese año,
al señor Colón Ortiz se le había dado de alta definitiva sin
incapacidad.  El oficial examinador rindió un informe donde
concluyó que el señor Colón Ortiz debía ser cesanteado, ya
que éste se ausentó de su trabajo por más de doce (12)
meses, sin solicitar su reinstalación al mismo dentro de ese
período de tiempo.  En vista de ello, el 18 de octubre de
1999, el Superintendente de la Policía de Puerto Rico
procedió a cesantearlo.[17]

Inconforme, el señor Colón Ortiz acudió en apelación
ante J.A.S.A.P., la cual el 17 de abril de 2001 emitió
resolución declarando ha lugar la apelación. **Concluyó, que
las disposiciones de la Ley del Sistema de Compensaciones
por Accidentes del Trabajo, _supra_, no aplican automática y
exclusivamente, y que las mismas deben ser armonizadas con
las de la Ley de la Policía de Puerto Rico de 1996, _supra_.
Por tal razón, ordenó que se dejara sin efecto la cesantía
del señor Colón Ortiz para que la Policía diera cumplimiento
al procedimiento estatuido en el artículo 18 de la referida
Ley.**[18]

Por no estar conforme con dicha determinación, la
Policía de Puerto Rico presentó solicitud de revisión ante
el Tribunal de Circuito de Apelaciones.[19]  Dicho foro
intermedio apelativo emitió sentencia el 27 de febrero de

---

[16] Apéndice del recurso de _Certiorari_, pág. 45.

[17] Íd., pág. 56.

[18] Íd., pág. 35.

[19] Íd., pág. 18.

2002, confirmando la determinación de J.A.S.A.P., al concluir que el artículo 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, supra, no excluye la aplicación del artículo 18 de la Ley de la Policía de Puerto Rico de 1996, supra. A esos efectos, concluyó que:

> **... el miembro de la Policía está protegido por la reserva de empleo que provee la Ley de Accidentes del Trabajo y, a su vez, tiene un mecanismo especial para los casos en que estos sufran accidentes durante el desempeño de sus funciones.**[20] (Énfasis nuestro.)

Insatisfecho con el referido dictamen, el Procurador General acude ante nos, señalando la comisión del siguiente error:

> ERRÓ EL TRIBUNAL DE CIRCUITO DE APELACIONES AL IGNORAR QUE EL ARTÍCULO 5A DE LA LEY DE ACCIDENTES DEL TRABAJO, AL DISPONER PARA UN PERÍODO DE RESERVA DE EMPLEO DE UN AÑO, IMPIDE LA APLICACIÓN, POSTERIOR A DICHO PERÍODO DE RESERVA, DEL ARTÍCULO 18 DE LA LEY DE LA POLICÍA.

IV

La Ley del Sistema de Compensaciones por Accidentes del Trabajo, supra, es una legislación de carácter remedial que persigue proteger y brindar beneficios al obrero, particularmente en el contexto de accidentes ocurridos en el lugar de trabajo o enfermedades ocupacionales. Por ello, creó un sistema de seguro compulsorio y exclusivo para compensar a los obreros y empleados que sufran lesiones, se inutilicen o mueran como consecuencia de enfermedades ocupacionales o de accidentes ocurridos en el desempeño de sus trabajos.[21] Sin embargo, mientras el obrero obtiene

---

[20] Íd., pág. 11.

rápidamente un apoyo económico y tratamiento médico, el patrono adquiere inmunidad contra cualquier acción en daños y perjuicios que el obrero pudiera instar en su contra por razón de los incidentes o circunstancias que dieron origen a la lesión u enfermedad ocupacional.[22]

---

[21] Según se establece en el artículo 2 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 2, la misma aplica a:

> ... [T]odos los obreros y empleados que trabajen para los patronos a quienes se refiere el párrafo siguiente, que sufran lesiones o se inutilicen, o que pierdan la vida por accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste, y como consecuencia del mismo o por enfermedades o muertes derivadas de la ocupación, según se especifican en la sec. 3 de este título. Se exceptúan expresamente aquellos obreros y empleados cuya labor sea de carácter accidental o causal y no esté comprendida dentro del negocio, industria, profesión u ocupación de su patrono y además aquellas personas que trabajen en sus domicilios.

> Este Capítulo por ser de carácter remedial se interpretará liberalmente, y cualquier duda razonable que en su aplicación surgiere en cuanto a la existencia de relación causal entre el trabajo u ocupación del obrero o empleado y la lesión, incapacidad o muerte, o el carácter ocupacional de una enfermedad, deberá resolverse a favor del obrero o empleado, o sus beneficiarios.

> Este Capítulo será aplicable a todo patrono que emplee uno o más obreros o empleados comprendidos en el mismo, cualquiera que sea su salario. El Gobierno del Estado Libre Asociado, y los diversos gobiernos municipales, juntas, comisiones, autoridades, instrumentalidades, corporaciones públicas y agencias del Estado Libre Asociado se considerarán como patronos y como tales serán comprendidos dentro de las disposiciones de este Capítulo en cuanto a los obreros, empleados y funcionarios que utilicen.

> ...

Véase, además, Rodríguez v. Méndez & Co., 147 D.P.R. 734, 739 (1999); Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178, 194 (1998).

[22] Soc. de Gananciales v. Royal Bank de P.R., supra, pág. 199.

De conformidad con dicho propósito, el artículo 5a de la referida Ley, supra, brinda protección a todo empleado que se inhabilite para trabajar por causa de un accidente ocurrido en el trabajo o una enfermedad ocupacional, estableciendo que:

... el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:

**(1) Que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince (15) días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente;**

(2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición, y

(3) que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición.)

Si el patrono no cumpliere con las disposiciones de esta sección vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o de daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en las secs. 3118 y 3132 del Título 32.

Ello quiere decir, que cuando un trabajador sufre un accidente o enfermedad ocupacional que lo inhabilita para trabajar, y se acoge a los beneficios de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, supra, el patrono está obligado a reservarle su empleo por doce (12)

meses, desde el momento en que ocurre el accidente o desde la fecha en que el obrero se reporte al F.S.E. en los casos de enfermedades ocupacionales. No puede despedirlo. Una vez el trabajador es dado de alta por el F.S.E. puede solicitar y obtener que se le reinstale en su empleo. Sin embargo, la protección que provee el artículo 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, supra, sólo dura un año y el derecho a la reinstalación se activa únicamente si dentro del término de doce (12) meses desde el accidente, el obrero es dado de alta y en el momento en que hace el referido requerimiento el empleado está física y mentalmente capacitado para realizar las funciones de su empleo.[23]

El patrono estará obligado a reinstalar al trabajador, siempre y cuando se cumplan tres (3) requisitos: (1) que la solicitud se haga dentro del término de quince (15) días de haber sido dado de alta y que no se realice luego de transcurrido el término de doce (12) meses desde la fecha del accidente o la enfermedad ocupacional; (2) que el obrero esté mental y físicamente capacitado para desempeñarse en las funciones del empleo que ocupaba; (3) y que dicho empleo subsista al momento de la solicitud. En todo caso le corresponde al patrono levantar como defensa que no se

---

[23] Rivera v. Ins. Wire Prods., Corp., res. el 16 de septiembre de 2002, 2002 T.S.P.R. 120, 158 D.P.R. ___ (2002), 2002 J.T.S. 128; Rivera v. Blanco Vélez Stores, res. el 30 de octubre de 2001, 2001 T.S.P.R. 146, 155 D.P.R. ___ (2001), 2001 J.T.S. 151; García v. Darex P.R., Inc., res. el 20 de mayo de 1999, 1999 T.S.P.R. 79, 148 D.P.R. ___ (1999), 1999 J.T.S. 84; Rodríguez v. Méndez & Co., supra, págs. 739-741, 743; Cuevas v. Ethicon Div. J&J Prof. Co., res. el 30 de junio de 1999, 99 T.S.P.R. 107, 148 D.P.R. __ (1999), 99 J.T.S. 111; Vélez Rodríguez v. Pueblo Int'l., Inc., 135 D.P.R. 500, 513-515 (1994); Torres v. Star Kist Caribe, Inc., 134 D.P.R. 1024, 1029-30 (1994); Carrón Lamoutte v. Compañía de Turismo, 130 D.P.R. 70, 78 (1992).

cumplió una de estas condiciones, para quedar liberado de la obligación que le impone el artículo 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, supra. Si el patrono incumple con su deber, vendrá obligado a reinstalar al empleado. Además, tendrá que pagar al obrero o a sus beneficiarios los salarios que hubiere devengado el trabajador de haber sido reinstalado y responderá de todos los daños y perjuicios que le haya causado. El empleado o sus beneficiarios podrán presentar la reclamación de reinstalación o de daños, o ambas, en un tribunal por acción ordinaria o mediante el procedimiento de reclamación de salarios establecido en la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3118 y 3132.[24]

En Rodríguez v. Méndez & Co., supra, expresamos que para que sea de aplicación el artículo 5a, supra, el obrero debe estar inhabilitado para desempeñar sus labores y que su ausencia del trabajo haya sido recomendada o autorizada por el F.S.E. La protección que brinda el artículo 5a, supra, es para aquellos empleados que se incapacitan temporalmente a causa de un accidente o enfermedad ocupacional y que, por ello, no pueden asistir a su lugar de empleo. Tal condición se ha definido como una **incapacidad transitoria** para trabajar. Es por esa razón que el F.S.E. autoriza al empleado para que se ausente de su empleo, y reciba tratamiento médico en descanso. Para esos obreros, el legislador estableció el período de reserva de empleo por doce (12) meses, de manera que cuando estuvieran aptos para incorporarse a sus labores, su trabajo estuviera disponible para ellos. La incapacidad transitoria cesará cuando el

---

[24] Íd.

obrero sea dado de alta, porque está curado o porque se reconoce una incapacidad permanente que no mejorará con más tratamiento médico o quirúrgico adicional.[25]

El artículo 5a, supra, le impone dos obligaciones al patrono: reservarle el trabajo a un empleado incapacitado, por un término de doce (12) meses, contados a partir de la fecha del accidente; y reinstalarlo, si éste así lo solicita. Ello, tiene como objetivo prevenir que un empleado se encuentre con la situación indeseable de que por haber sufrido un accidente o contraído una enfermedad en el trabajo, su patrono lo despida sin justa causa, o que cuando regrese dado de alta, no tenga trabajo.[26] Según el tratadista Ruy N. Delgado Zayas, "fue la intención del legislador que la protección que recibiera el trabajador mediante esta legislación, no fuera una meramente económica. Lo que pretendió proteger fue esencialmente la tenencia del empleo". De esta manera, la Ley del Sistema de Compensaciones por Accidentes del Trabajo, supra, imprimió la formulación de política pública que hizo efectivo el derecho constitucional de todos los trabajadores en Puerto Rico a recibir protección contra riesgos a la salud y a su integridad personal.[27]

---

[25] Torres v. Star Kist Caribe, Inc., supra,; Gámbaro Ramos v. F.S.E., 112 D.P.R. 304, 306 (1982); Ríos Rivera v. Comisión Industrial, 108 D.P.R. 808, 814 (1979); Rivera Rivera v. Comisión Industrial, 101 D.P.R. 712, 717 (1973). Véase además, el Reglamento sobre Derechos de Obreros y Empleados de la Corporación del Fondo del Seguro del Estado de 9 de agosto de 1989 (11 R.E.L.A. sec. 300.261 2000).

[26] Rivera v. Ins. Wire Prods., Corp., supra; Rivera v. Blanco Vélez Stores, supra; Rodríguez v. Méndez & Co., supra, pág. 741; Soc. de Gananciales v. Royal Bank de P.R., supra; Torres v. Star Kist Caribe, Inc., supra; Carrón Lamoutte v. Compañía de Turismo, supra; Santiago v. Kodak Caribbean, Ltd., 129 D.P.R. 763, 770 (1992).

A través de la reserva de empleo que establece el artículo 5a, supra, el legislador armonizó la protección y seguridad del obrero lesionado con los intereses pecuniarios del patrono. **Por tal razón, la reserva de empleo se limitó a doce (12) meses.  No se estableció una reserva de empleo indefinida.  El período que establece la Ley del Sistema de Compensaciones por Accidentes del Trabajo, supra, para que un empleado que se ha acogido a los beneficios que ofrece el F.S.E. solicite la reinstalación a su puesto, es un término de caducidad que comienza a transcurrir a partir de la fecha en que ocurrió el accidente,[28] o desde la fecha en que el obrero se reporta al F.S.E. en los casos de enfermedades ocupacionales.[29]  Una vez transcurrido este término, el patrono puede despedir al empleado, si el mismo aún no ha sido dado de alta del F.S.E.  Esta es una prerrogativa del patrono, cuando el obrero lesionado no ha presentado oportuna y válidamente la solicitud de reinstalación.[30]** Ello

---

[27] Documentos Históricos, 1 L.P.R.A., Art. 1, Sec. 16. Véase, además, Torres v. Star Kist Caribe, Inc., supra, pág. 1029; Rivera v. Ins. Wire Prods., Corp., supra; Rivera v. Blanco Vélez Stores, supra; García v. Darex P.R., Inc., supra; Cuevas v. Ethicon Div. J&J Prof. Co., supra; Ruy N. Delgado Zayas, Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño, Revisión 1996, San Juan, Ramallo Bros. Printing, Inc., 1996, págs. 187-194; Ruy N. Delgado Zayas, Comentarios sobre el despido del trabajador que ha sufrido un accidente del trabajo, IX 33 Revista del Trabajo 1 (1981).

[28] Santos et al. v. Lederle, res. el 17 de abril de 2001, 2001 T.S.P.R. 53, 153 D.P.R. ___ (2001), 2001 J.T.S. 55; Rivera v. Ins. Wire Prods., Corp., supra; Rivera v. Blanco Vélez Stores, supra; García v. Darex P.R., Inc., supra; Cuevas v. Ethicon Div. J&J Prof. Co., supra; Soc. de Gananciales v. Royal Bank de P.R., supra; Alvira v. SK & F Laboratories Co., 142 D.P.R. 803 (1997).

[29] Rodríguez v. Méndez & Co., 147 D.P.R. 734, 740 (1999).

[30] Véase, además, Rivera v. Blanco Vélez Stores, supra; García v. Darex P.R., Inc., supra; Soc. de Gananciales v. Royal Bank de P.R., supra, pág. 199; Carrón Lamoutte v. Compañía de Turismo, supra.

surge con meridiana claridad del historial legislativo del artículo 5a, supra. Veamos.

El artículo 5a, supra, fue adicionado a la Ley del Sistema de Compensaciones por Accidentes del Trabajo por medio de la Ley Núm. 48 de 18 de abril de 1950. **El término originalmente establecido en dicha Ley para solicitar reinstalación era de seis (6) meses.** El 23 de marzo de 1971, se presentó el P. del S. 947 para eliminar por completo el término de seis (6) meses para solicitar reinstalación. De haber sido aprobado ese proyecto, el obrero lesionado hubiese podido solicitar reinstalación en su empleo dentro de los quince (15) días contados a partir de la fecha en que el empleado fuere notificado por el Administrador del F.S.E. que se le ha dado de alta, sin mayores limitaciones de tiempo.[31] Posteriormente, se presentó el P. del S. 844 del 5 de febrero de 1971, el cual iba dirigido a aumentar de seis (6) a doce (12) meses el término para solicitar reinstalación en el empleo y concederle al obrero una causa de acción en daños y el pago de los salarios dejados de devengar. Dichas piezas legislativas no fueron aprobadas y, por ende, quedó vigente el término de seis meses que establecía la Ley Núm. 48 de 18 de abril de 1950, para solicitar la reinstalación en el empleo.[32] No fue sino hasta el 8 de marzo de 1973 que fue aprobado el P. de la C. 398, el cual se convirtió en la Ley Núm. 101 de 5 de junio de 1973.[33] El referido estatuto enmendó el artículo 5a, supra, para aumentar de seis (6) a

---

[31] 25 Diario de Sesiones de la Asamblea Legislativa 449 (1971).

[32] Actas del Senado de Puerto Rico 181 (1971).

[33] 1973 Leyes de Puerto Rico 459.

doce (12) meses el término para solicitar reinstalación al empleo y reconocer al empleado una causa de acción en daños y perjuicios por razón de cualquier incumplimiento con dicho estatuto, en adición a los salarios que hubiere recibido de haber sido reinstalado. Además, le concedió al empleado la facultad de establecer su reclamación mediante la vía ordinaria o el procedimiento sumario para reclamación de salarios, según estatuido en la Ley Núm. 2 de 17 de octubre de 1961.[34]

El propósito de dicha enmienda, según se desprende del Informe Conjunto de las Comisiones del Trabajo y Asuntos del Veterano y Gobierno de la Cámara de Representantes,[35] era el siguiente:

> ... aumentar el término de seis a doce meses, después de la fecha del accidente, para solicitar reposición en el empleo que ocupaba originalmente. También requiere del patrono que no cumpla con las disposiciones del aludido artículo 5-A , el pago al obrero o empleado o a sus beneficiarios, de los salarios que éste hubiese devengado de haber sido reinstalado, además de los daños y perjuicios que se le haya ocasionado.
>
> ...
>
> Este proyecto de ley provee específicamente un procedimiento efectivo a utilizarse para que el trabajador que ha sufrido un accidente reclame [ser] repuesto en su empleo original y señala las sanciones a imponerse al patrono que se negare a hacerlo. Esto es un paso adelante, ya que la ley vigente no establece procedimiento alguno a seguirse en caso de que el patrono se negare a reinstalar a dicho obrero.
>
> Los Departamentos del Trabajo y de Justicia y el Administrador del Fondo del Seguro del Estado recomendaron la aprobación de este proyecto.

En <u>Alvira v. SK & F Laboratories Co.</u>, <u>supra</u>, señalamos que **el término de reserva de empleo por doce (12) meses, que**

---

[34] 32 L.P.R.A. secs. 3118-3133.

[35] Refiérase al historial legislativo de dicha Ley del Sistema de Compensaciones por Accidentes del Trabajo.

**establece el artículo 5a, "*es de caducidad y no puede interrumpirse de forma alguna*. La solicitud de reinstalación tiene que hacerse dentro de los doce (12) meses a partir de la fecha que ocurrió el accidente o la enfermedad laboral".** (Énfasis nuestro.) **Luego de transcurrido dicho término, el patrono puede despedir al empleado, si éste aún se encuentra en período de recuperación por no haber sido dado de alta.**[36] En <u>Santos Berríos v. Lederle</u>, <u>supra</u>, reiteramos la doctrina anteriormente expuesta.[37]

V

El 10 de junio de 1996 se aprobó la Ley de la Policía de Puerto Rico de 1996,[38] con el propósito de darle uniformidad a la estructura operacional de la Policía y, por ende, hacer más ágil su administración y la utilización de sus recursos.[39] Específicamente, el artículo 18 de dicha Ley, <u>supra</u>,[40] establece un procedimiento especial para los

---

[36] El período de recuperación es aquel que se inicia una vez el empleado se presenta para recibir un tratamiento luego de ocurrir un accidente del trabajo o cuando éste se queje por vez primera de alguna condición relacionada con su trabajo. Este período finaliza al darse de alta al paciente, ya sea porque esté curado y sin incapacidad, o porque se reconoce la existencia de una incapacidad permanente que no ha de mejorar con más tratamiento. El obrero que se encuentre en este período de recuperación inicial se entiende que está bajo tratamiento médico en el F.S.E. para efectos de la Ley de Compensaciones del Trabajo.

[37] Véase además, <u>Rivera v. Blanco Vélez Stores</u>, <u>supra</u>; <u>Cuevas v. Ethicon Div. J&J Prof. Co.</u>, <u>supra</u>; <u>Soc. de Gananciales v. Royal Bank de P.R.</u>, <u>supra</u>; <u>Carrón Lamoutte v. Compañía de Turismo</u>, <u>supra</u>.

[38] 25 L.P.R.A. sec. 3101, <u>et seq.</u>

[39] Véase, la Exposición de Motivos de la referida Ley en 1996 Leyes de Puerto Rico 175.

[40] 25 L.P.R.A. sec. 3117.

casos en que un miembro de la policía haya sufrido un accidente del trabajo.

El artículo 18, supra, en lo pertinente, dispone lo siguiente:

...

(b) El tiempo durante el cual un miembro de la Policía tenga que permanecer hospitalizado o recluido bajo tratamiento médico como consecuencia de algún accidente o heridas sufridas en el desempeño de sus funciones no será deducible de las licencias de vacaciones o enfermedad autorizadas en el inciso (a) de esta sección. Continuará recibiendo su sueldo mensual y cualquiera otro derecho ya adquirido. Durante este tiempo acumulará licencia por vacaciones y licencia por enfermedad, pero no recibirá pagos suplementarios.

Nada de lo aquí dispuesto impedirá que los miembros de la Policía bajo tratamiento como consecuencia de un accidente en el trabajo sean:

(1) Retirados del servicio con pensión, de acuerdo con las leyes sobre la materia vigente, si la Junta de Evaluación Médica creada en la sec. 3019 de este título, luego de las correspondientes evaluaciones médicas, determina que éstos están física o mentalmente incapacitados para el servicio.

En este caso, el miembro de la Fuerza concernido, si es separado, continuará recibiendo tratamiento médico y tendrá derecho a recibir las dietas que por ese concepto le asigne el Fondo del Seguro del Estado. Si la incapacidad física o mental desapareciere, dicho miembro de la Fuerza podrá reingresar al servicio, previa certificación de la Junta de Evaluación Médica.

No más tarde de treinta (30) días después de ser referido el caso, el médico de la Policía y el médico del Fondo del Seguro del Estado deberán certificar si el miembro de la Policía padece una lesión grave o leve y si la misma es temporera o permanente y si incapacita al miembro de la Policía. Ambos deberán certificar si el empleado padece de una lesión grave o leve que sea permanente, ambas por un período prolongado, para que tenga el derecho concedido por la presente ley.

(A) En el caso de lesiones leves o graves que sean temporeras, al emitir la certificación ambos médicos también deberán incluir en la misma el período de descanso recomendado. Si al vencimiento de dicho período, el paciente insiste

en que la lesión física o mental persiste, ambos médicos deberán emitir una nueva certificación sobre la veracidad de las alegaciones presentadas por el paciente, no más tarde de diez (10) días a partir del vencimiento del período originalmente autorizado para el descanso. Se requerirá que las certificaciones de ambos médicos coincidan en sus recomendaciones cuando se ordene la reinstalación del paciente al servicio. De igual manera, cuando de las evaluaciones periódicas al paciente se determine que procede su reinstalación al servicio, antes de vencer el período de descanso originalmente autorizado, también se requerirá que coincidan las recomendaciones de ambos médicos.

**Cuando las determinaciones de los médicos no coincidan, prevalecerá la de la Junta de Evaluación Médica de la Policía.**

(B) En el caso en que la lesión sea certificada por el médico de la Policía y el médico del Fondo del Seguro del Estado como grave o leve sea permanente, ambas o por un período prolongado, conforme la definición de dichos términos expuestos en la presente ley, pero que no incapacite al miembro de la Fuerza, la Policía de Puerto Rico, en primer lugar se le proveerá acomodo razonable reconociéndosele los derechos conforme a la Ley Pública 101-336 de 26 de julio de 1990, conocida como *Americans with Disabilities Act of 1990*, según enmendada. La persona concernida tendrá derecho, conforme a su capacidad, en caso de que no cualifique para acomodo razonable en la Policía de Puerto Rico a que se le reubique en cualquier otro puesto en el servicio público, para el cual reúna los requisitos mínimos establecidos para el mismo. Para fines de los procedimientos de reclutamiento y selección, se respetaran las disposiciones de personal de las secs. 1301 et seq. del Título 3, conocidas como la "Ley de Personal del Servicio Público", aplicables a cada agencia o administrador individual en particular.

(C) En el caso de lesiones físicas o mentales graves y permanentes que impidan el pleno desempeño del paciente como miembro de la Policía, se procederá con la determinación a esos efectos por los médicos de la Policía, el Fondo del Seguro del Estado y el Sistema de Retiro. Si existen diferencias de opiniones prevalecerá la determinación de la Junta de Evaluación Médica. Si dicha Junta de Evaluación determinara que el empleado no está apto para realizar las labores inherentes a su puesto, se procederá con su separación del servicio. Dicha determinación deberá producirse mediante certificación a más tardar sesenta (60) días a partir del momento en que el paciente tramite su solicitud a consecuencia de los padecimientos que conlleve la lesión sufrida. (Énfasis nuestro.)

...

En cuanto a la creación de la Junta de Evaluación Médica (en adelante la Junta), el artículo 19 de la precitada Ley, supra,[41] establece que la misma se compondrá de un psiquiatra, un psicólogo, un médico especialista en medicina interna, un médico cirujano y un médico especialista en medicina ocupacional, con no menos de cinco (5) años de experiencia en sus respectivas ramas. Además, señala que la Junta tendrá las facultades y deberes otorgados a ella en el artículo 18, supra, y que "sus decisiones prevalecerán sobre las determinaciones de los médicos del Fondo del Seguro del Estado y del Sistema de Retiro. La reinstalación de cualquier miembro de la Fuerza necesitará previa autorización de la Junta de Evaluación Médica".

Del lenguaje estatutario anterior se desprende que cuando un agente de la Policía de Puerto Rico sufre un accidente del trabajo, deberá primero ser evaluado por un médico de la Policía de Puerto Rico y por otro médico del F.S.E. Ambos médicos deberán certificar si el miembro de la Policía padece de una condición leve o grave y si la misma es temporera o permanente, por un período prolongado. De ser una condición temporera, deberá incluirse en la certificación el período de descanso recomendado. Se requiere, además, que ambos médicos coincidan en cuanto a la procedencia de la reinstalación del miembro de la Policía, una vez éste se haya repuesto de su incapacidad. De no coincidir las determinaciones de los facultativos médicos, **prevalecerá la determinación de la Junta de Evaluación**

---

[41] 25 L.P.R.A. sec. 3118.

**Médica de la Policía, organismo creado por la Ley para entender en esos casos.**

De otro lado, la Ley de la Policía de Puerto Rico de 1996, supra, dispone que cuando la lesión, certificada como grave o leve, sea permanente, ambas por un período prolongado, pero que no lo incapacite, se le proveerá al miembro de la Fuerza acomodo razonable. De no cualificar para acomodo razonable se le reubicará en cualquier otro puesto del servicio público para el cual reúna los requisitos mínimos establecidos para el mismo. Finalmente, resta señalar que la propia Ley provee para que en caso de que la Junta de Evaluación Médica determinara que el miembro de la Policía esté incapacitado para el servicio, el mismo sea retirado con pensión, de acuerdo a las leyes vigentes sobre la materia. **Sin embargo, no se desprende de la Ley de la Policía de Puerto Rico de 1996, supra, ni de su historial legislativo, que el legislador hubiere establecido un término para que los médicos puedan recomendar la separación temporera de un miembro de la Fuerza por razón de un accidente del trabajo. No surge del texto de la referida Ley, ni de su historial legislativo, que el Superintendente de la Policía esté obligado a reservar el empleo del miembro de la Policía o brindar los remedios que contempla el artículo 18 de la Ley de la Policía de Puerto Rico de 1996, supra, más allá de los doce (12) meses que establece el artículo 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, supra.**

Lo que surge con meridiana claridad del historial legislativo de la Ley de la Policía de Puerto Rico de 1996, supra, fue la intención del legislador de dar participación definitiva a los médicos de la Policía para que, en

coordinación con los médicos del F.S.E., determinaran el carácter de la enfermedad o lesión sufrida por el miembro de la Policía en su trabajo y el procedimiento a seguir para su reinstalación eventual en el empleo. Por ello se estableció que en última instancia, de existir alguna discrepancia entre el criterio del médico de la Policía y el del F.S.E., deberá prevalecer la determinación de la Junta de Evaluación Médica de la Policía. El referido estatuto tuvo el propósito de distinguir y particularizar las circunstancias laborales especiales de los miembros de la Policía de Puerto Rico con relación a otros empleados públicos. La naturaleza de la función de los primeros conlleva ciertos riesgos y responsabilidades que sólo pueden entender a cabalidad los facultativos médicos de la Fuerza Policíaca.[42]

---

[42] A esos efectos, en el debate para la aprobación del Proyecto de la Cámara 2451, que luego se convirtió en la Ley de la Policía de Puerto Rico de 1996 ante nuestra evaluación, el honorable Pedro Figueroa Costa representante a la Cámara Baja, expresó lo siguiente:

**Al crear la Junta de Evaluación Médica en la Policía de Puerto Rico lo que se está disponiendo aquí es que la decisión final y firme con relación a si un miembro de la Fuerza puede o no puede mantenerse trabajando como policía, será precisamente de la Policía de Puerto Rico y de esa Junta de Evaluación Médica. Es decir, si el Fondo del Seguro del Estado entiende que ese policía debe continuar bajo tratamiento, pero la Junta Médica de la Policía lo evalúa directamente o a través de la subcontratación de un especialista o subespecialista, que los puede contratar la Policía de Puerto Rico para que ofrezcan su peritaje en la evaluación de ese caso—, la Junta determina que ese policía está capacitado para prestar servicio como policía, la decisión que prevalecería es la decisión de la Junta de Evaluación Médica de la Policía de Puerto Rico.**

**...**

**... Aquí lo que queremos es la certeza de que los criterios que utiliza el Fondo del Seguro del Estado, o el Sistema de Retiro para evaluar la competencia, la habilidad de un individuo para**

La aprobación del artículo 18 de la Ley de la Policía de Puerto Rico de 1996, _supra_, no tuvo el ánimo ni el propósito de producir la interrupción o paralización del término de caducidad que establece el artículo 5a de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, _supra_. Los remedios que establece la Ley de la Policía de Puerto Rico de 1996, _supra_, en cuanto a proveer acomodo razonable, reubicación, período de descanso, retiro con pensión, etc., a los miembros de la Policía que sufren un accidente del trabajo, se tienen que atender dentro del período de doce (12) meses que contempla el artículo 5a, _supra_. El período de doce (12) meses de reserva de empleo que el Superintendente de la Policía tiene que garantizar a un miembro de la Policía acogido a los beneficios que establece la Ley del Sistema de Compensaciones por Accidentes del Trabajo, _supra_, comienza a transcurrir desde la fecha del accidente o desde la fecha en que el empleado

---

reinstalarse al servicio público, son unos criterios para el resto de Gobierno distintos a los que se deben utilizar para la Policía de Puerto Rico. Porque tal vez bajo los criterios que utiliza el Fondo del Seguro del Estado se indica que determinado funcionario ejecutivo de una agencia de Gobierno puede volver a trabajar porque su trabajo es en el Departamento del Trabajo, en el Departamento de Estado. Pero en el caso de los policías estamos hablando de aquellos servidores públicos que reciben, por mandato de ley, la autoridad de portar un arma de fuego, la autoridad de portar un rotén y de compeler al orden y la obediencia hasta mediante la violencia cuando sea necesario; estamos hablando de un servidor público con una función de mayor riesgo, no tan sólo a ser agredido, sino a verse obligado a agredir; y en esos criterios, o en ese contexto específico, a quien se le debe delegar la facultad de determinar si un ser humano está capacitado para desempeñar tan grave responsabilidad debe ser a una Junta de Evaluación Médica de la Policía de Puerto Rico, que evalúe y resuelva el caso a base de las consideraciones específicas de la naturaleza de la función del policía y de ese ser humano, y las facultades mentales o físicas de ese ser humano. ... (Énfasis nuestro.)

se reporta al F.S.E. en casos de enfermedades ocupacionales, independientemente de las gestiones que tenga que realizar la Policía, según lo establece el artículo 18 de su Ley, supra. Dicho término es de caducidad y, por lo tanto, no está sujeto a interrupción, según lo estableciéramos en Alvira v. SK & F Laboratories Co., supra.[43] El miembro de la Policía de Puerto Rico que esté acogido a los beneficios que establece la Ley del Sistema de Compensaciones por Accidentes del Trabajo, supra, tendrá derecho a ser reinstalado en su puesto sólo si así lo solicita a su patrono dentro del término de quince (15) días de haber sido dado de alta, siempre que no hayan transcurrido doce (12) meses desde la fecha del accidente o desde la fecha en que el empleado se reporta al F.S.E., en casos de enfermedades ocupacionales. El empleado está obligado a solicitar los remedios o beneficios que dispone el artículo 18 de la Ley de la Policía, supra, dentro de dichos términos y ajustado a la intención y al propósito que inspiró la aprobación de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, supra. Este requerimiento no será legítimo, si es realizado después de transcurridos doce (12) meses. Así se desprende claramente del precitado artículo 5a, supra.[44]

---

[43] Véase además, Santos Berrios v. Lederle, supra; Rivera v. Blanco Vélez Stores, supra; Cuevas v. Ethicon Div. J&J Prof. Co., supra; Soc. de Gananciales v. Royal Bank de P.R., supra; Carrón Lamoutte v. Compañía de Turismo, supra.

[44] Véase, a los efectos de un análisis más detallado del referido asunto, J.L. Verdiales Morales y J.J. Santiago Meléndez, Reserva de empleo al obrero incapacitado por accidente laboral bajo el artículo 5A de la Ley de Compensaciones por Accidentes del Trabajo, 61 Rev. Jur. U.P.R. 59 (1992); Lyntha A. Figueroa Rivera, La reserva de empleo del artículo 5(A) de la Ley de Compensaciones por Accidentes del Trabajo, 33 núm. 2-3 Revista de Derecho Puertorriqueño 227, 232-233 (1993).

A la luz de lo antes expuesto, es forzoso concluir que el Superintendente de la Policía de Puerto Rico no tenía la obligación de reservar el empleo a los peticionarios, en exceso del término de doce (12) meses que prescribe el artículo 5a, <u>supra</u>.  Por lo tanto, concluimos que el Superintendente de la Policía actuó de conformidad con el ordenamiento jurídico vigente al cesantear de su puesto a los peticionarios, una vez transcurrido el término de reserva de empleo antes aludido.

VI

Por los fundamentos antes expuestos, y expedidos los autos de <u>certiorari</u> solicitados en los tres casos de epígrafe, confirmamos las sentencias emitidas por el Tribunal de Circuito de Apelaciones en los casos CC-2002-109 y AC-2002-11.  En cuanto al caso CC-2002-258, revocamos la sentencia dictada por dicho foro intermedio apelativo.

Se dictará sentencia de conformidad.


Efraín E. Rivera Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | | | |
|---|---|---|---|---|
| José M. Toro Cruz | * | | * | |
| | * | | * | |
| Peticionario | * | | * | |
| | * | | * | |
| v. | * | CC-2002-109 | * | Certiorari |
| | * | | * | |
| Policía de Puerto Rico | * | | * | |
| | * | | * | |
| Recurrida | * | | * | |
| | * | | * | |
| Juan Nieves Vázquez | * | | * | |
| | * | | * | |
| Peticionario | * | | * | |
| | * | | * | |
| v. | * | AC-2002-11 | * | Certiorari |
| | * | | * | |
| Policía de Puerto Rico | * | | * | |
| | * | | * | |
| Recurrida | * | | * | |
| | * | | * | |
| Ricardo Colón Ortiz | * | | * | |
| | * | | * | |
| Recurrido | * | | * | |
| | * | | * | |
| v. | * | CC-2002-258 | * | Certiorari |
| | * | | * | |
| Policía de Puerto Rico | * | | * | |
| | * | | * | |
| Peticionaria | * | | * | |

SENTENCIA

En San Juan, Puerto Rico, a 24 de abril de 2003.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirman las sentencias emitidas por el Tribunal de Circuito de Apelaciones en los casos CC-2002-109 y AC-2002-11. En cuanto al caso CC-2002-258, revocamos la sentencia dictada por dicho foro intermedio apelativo.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita. El Juez Asociado señor Rebollo López no intervino.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo