JULIA, PABLO y otros, de apellidos CORTIJO WALKER, demandantes, *v.* AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO, demandada y tercera demandante y recurrente; ANASTACIO RODRÍGUEZ CUBANO, tercero demandado y recurrido.

*Número:* R-64-11        *Resuelto:* 18 de diciembre de 1964

---

*José Antonio Arabía, Carlos Díaz Lamoutte, y Carlos Santos Correa,* abogados de la recurrente; *Vicente Pérez Díaz,* abogado del recurrido.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

El Juez Asociado Señor Santana Becerra emitió la opinión del Tribunal.

El 13 de mayo de 1960 el obrero Julio Eduardo Cortijo Walker falleció electrocutado en el curso de su trabajo. El Fondo del Seguro del Estado consideró el caso como un accidente del empleo cubierto por la Ley de Compensaciones por Accidentes del Trabajo, y el 17 de enero de 1961 emitió una decisión compensando al menor Víctor Lanzó, hermano del obrero fallecido, en la cantidad de $5,184. Dictaminó que dicho menor era la única persona con derecho a recibir los beneficios de la Ley por razón de dependencia. Expuso el Fondo que la muerte le ocurrió al obrero en el curso de las funciones normales y ordinarias de su empleo al electrocu-

tarse cuando un cable de alambre galvanizado que llevaba en sus manos hizo contacto con corriente eléctrica de alto voltaje.

En agosto 29, 1961 los demandantes Julia, Pablo, Edwin, Victoria, Isolina, José Amalio, Ángel y Víctor Vicente, todos de apellidos Cortijo Walker, interpusieron demanda de daños y perjuicios por esta muerte contra la Autoridad de las Fuentes Fluviales. Alegaron que el obrero murió sin dejar ascendencia o descendencia, sobreviviéndole los demandantes y que algunos de ellos "dependían para su subsistencia" de lo que el obrero les proporcionaba; que su muerte se debió a la única y exclusiva negligencia de la demandada Autoridad de las Fuentes Fluviales al no observar las debidas precauciones y al no prever como debió haber previsto que el tener alambres de alta tensión sin la protección debida ponía en grave riesgo las vidas de terceras personas; y que como consecuencia del accidente los demandantes han sufrido perjuicios, angustias mentales y morales. (1) La Autoridad contestó y admitió la ocurrencia del accidente y negó los demás hechos. Alegó como defensa que el accidente se debió a la negligencia exclusiva del obrero o a la del obrero y terceras personas; y que de no haber habido negligencia éste fue un caso fortuito y un accidente desgraciado.

Aproximadamente dos años después, en 26 de agosto de 1963, la demandada interpuso demanda de tercero contra el patrono Anastacio Rodríguez Cubano imputándole negligencia y responsabilizándolo por el accidente ocurrido. Alegó que el patrono permitió que se realizaran obras de construcción en las inmediaciones de las líneas conductoras de energía eléctrica de la demandada sin tomar las debidas precauciones para evitar que alguien pudiera entrar en contacto con esas líneas, conociendo o debiendo conocer el riesgo envuelto y sin poner en conocimiento de la Autoridad la realización de tales obras cerca de las líneas eléctricas para que pudiera actuar ante

---

(1) El menor, declarado único beneficiario por dependencia bajo la Ley de Compensaciones por Accidentes del Trabajo, no demandó.

tal situación, y que actuó en violación de un deber independiente, expreso o implícito impuesto por ley para con la Autoridad. Pidió que se condenara al tercero demandado a indemnizar a los demandantes, o a satisfacerle a la Autoridad cualquier cantidad que ésta viniera obligada a pagarle a aquéllos.

El patrono y tercero demandado interpuso moción para desestimar y moción para que se dictara sentencia sumariamente, alegando la falta de responsabilidad en ley. A su moción de sentencia sumaria unió declaración jurada al efecto de que él era un patrono asegurado en el Fondo bajo una póliza que cubría al obrero y que en adición a la cantidad de $5,184 fijada por el Fondo, se entregó a los beneficiarios la suma adicional de $5,000 producto de una póliza grupal que el patrono tenía a favor de sus empleados. Acompañó copia certificada de la decisión del Fondo declarando este accidente como uno del trabajo protegido por la Ley. La demandada se opuso a la moción sobre sentencia sumaria, sin acompañar declaración o prueba alguna. La Sala dictó sentencia sumariamente desestimando la demanda de tercero contra el patrono. Revisamos esa sentencia sumariamente dictada.

Dispuso la Ley de Compensaciones por Accidentes del Trabajo de 1935 en su Art. 20 que cuando el patrono asegure sus obreros y empleados de acuerdo con dicha Ley, el derecho establecido en la misma para obtener compensación *"será el único remedio en contra del patrono"*, y en aquellos casos no cubiertos por la Ley la responsabilidad del patrono continuaba siendo la misma como si dicha Ley no existiera. El Art. 16 de la Ley se pronuncia en igual sentido en cuanto a la responsabilidad del patrono cuando el accidente no está cubierto por dicho estatuto especial, y refiere dicha responsabilidad al Código Civil, Art. 1802. ([2])

---

([2]) Véase la Ley de 1ro. de marzo de 1902 sobre responsabilidad del patrono por negligencia en casos de accidentes del trabajo.

El Art. 31 dispone que en aquellos casos en que la lesión, enfermedad o muerte que dan derecho a compensación al obrero, empleado o sus beneficiarios, bajo las disposiciones de la Ley, le hubieren provenido en circunstancias que hicieren responsable a tercero de tal lesión, enfermedad o muerte, el obrero o empleado o sus beneficiarios podrán reclamar y obtener daños del tercero responsable de dicha lesión, enfermedad o muerte. Este mismo artículo subroga al Fondo del Seguro del Estado en los derechos de tal obrero o empleado o de sus beneficiarios en esos casos, y puede entablar acción en nombre del obrero o empleado o de sus beneficiarios contra el tercero. Si el Fondo no se subrogare y dejare de entablar acción contra la tercera persona, aun así el obrero o empleado o sus beneficiarios están en libertad de interponer tal acción de daños.

Bajo el régimen de nuestro estatuto de Compensaciones por Accidentes del Trabajo, está aquí decidido que el obrero o empleado lesionado o sus beneficiarios, no pueden exigir resarcimiento al patrono bajo las normas de responsabilidad del derecho común, en nuestro caso, del Código Civil. La compensación que da el estatuto es el único resarcimiento del obrero o sus beneficiarios en cuanto a su patrono, siempre que el caso esté dentro del ámbito de la Ley. *De Jesús* v. *Osorio,* 65 D.P.R. 640, 642 (1946) ; *Onna* v. *The Texas Co.,* 64 D.P.R. 520, 524 (1945) ; *Rivera* v. *Comisión Industrial,* 67 D.P.R. 561, 563 (1947) ; *Fonseca* v. *Prann,* 282 F.2d 153, 157, *cert.* denegado, 365 U.S. 860. Y véase: cuando el estatuto de compensación no cubre el caso: *Arroyo* v. *Plaza Provision Co.,* 68 D.P.R. 962, 965 (1948).

Ante la histórica experiencia de la cuesta-arriba azarosa del obrero para obtener resarcimiento en accidentes del trabajo, cuando para ello debía probar convincentemente actos de negligencia del patrono o de otro compañero de labor y estaba sujeto a la vez a la imputación de su propia negligencia o descuido como defensa del patrono, situación histórica esa que

tantas veces dejó al obrero o a sus familiares en el desamparo, el Legislador optó aquí por un sistema integrado sobre la base de una responsabilidad objetiva social en esta esfera de relación del trabajador y su patrono. Pudo ser a costa de someter al obrero o sus familiares en relación con el patrono, al resarcimiento módico de una compensación estatutaria y en torno sólo a un criterio de dependencia, en comparación al resarcimiento mayor y de relación más amplia bajo las normas generales del Derecho civil; y de privarlos de esto último. El Legislador hizo su selección entre factores de conveniencia y aplicó un sistema social integrado de responsabilidad objetiva. La inmunidad que ha concedido al patrono contra otras acciones o remedios—Art. 20—en los casos cubiertos por el estatuto, debió ser esencial al sistema de responsabilidad objetiva implantado, como un medio de alentar el que todo patrono se asegure, sin lo cual el sistema no podría ser efectivo.

Este criterio legislativo de conceder inmunidad al patrono contra remedios fuera de la compensación se pronuncia aun más al adoptarse en 1935 el estatuto vigente. Bajo la legislación de 1928—Ley Núm. 85—que fue sustituida por la actual, existía igual disposición—Sec. 33—declarando la compensación estatutaria el único remedio contra un patrono que aseguraba a sus obreros. No obstante esa disposición, la propia Ley Núm. 85 en su Sec. 44 concedía una acción de daños a favor del obrero o sus herederos contra un patrono cuando las lesiones se debían al acto ilegal o *negligencia* criminal de su patrono, permitiéndole en tal caso al obrero o sus herederos renunciar a los beneficios del estatuto. De manera similar, la Sec. 45 permitía a la Comisión Industrial subrogarse en el derecho del obrero o sus herederos y obtener daños contra *un patrono* responsable de la lesión en el caso de acto ilegal o *negligencia* criminal del patrono. Esas disposiciones del estatuto anterior se descartaron desde el 1935 al adoptarse la ley actual, lo cual demuestra un señalado y

definitivo criterio del Legislador de no conceder acción general de daños por concepto alguno contra el patrono cualquiera que fueren sus actuaciones en la esfera aquiliana y el grado de culpa o negligencia, con excepción de aquellas situaciones del Art. 15—patrono no asegurado—en que concediéndose al obrero o sus familiares los beneficios de la Ley, se les permite demandar al patrono en daños como una sanción adicional al incumplimiento de no asegurarse. Éste es el único caso.

Con lo anteriormente expuesto como telón de fondo, vamos al recurso. En este litigio no está ante nuestra consideración una demanda de daños de los beneficiarios o familiares del obrero fallecido contra el patrono. En cuanto a una situación así este Tribunal ya se ha manifestado. A pesar de ello, en verdad lo que el recurso envuelve en última instancia es esa misma responsabilidad en daños del patrono a la cual nos hemos estado refiriendo.

Los beneficiarios del obrero han demandado a la Autoridad recurrente y alegan que su negligencia causó la muerte. La recurrente trae a responder al patrono como tercero demandado invocando su alegada negligencia, y pide que sea éste quien indemnice a los demandantes. En la alternativa, lo cual equivaldría a lo mismo, que satisfaga a la recurrente el todo o parte de lo que ésta viniera obligada a pagar a los demandantes. Se pone al patrono asegurado en la posición de afrontar y de tener que defenderse de una reclamación de daños por la muerte de un obrero suyo en el curso del trabajo, a base de su negligencia.

◼ Bajo disposiciones estatutarias como el Art. 20, es improcedente en derecho una demanda de tercero contra el patrono en las circunstancias del récord—patrono asegurado y el accidente cubierto por el estatuto de compensaciones—lo mismo bajo la teoría de la "contribución", en que un co-causante del daño vendría obligado a responder a otro co-causante, como bajo la teoría del derecho de un demandado en daños a ser "indemnizado" por un tercero demandado en

relación con los hechos. (³) La inmensa mayoría de los tribunales han sostenido la improcedencia de tal demanda de tercero contra el patrono, en los lugares donde existe una disposición de remedio exclusivo como la de nuestro estatuto. El Profesor Larson, al referirse a la materia, sintetiza así el fundamento de dicha improcedencia según el criterio judicial: el patrono no les es responsable al obrero en daños, luego no adquiere la condición de un co-causante del daño, (*joint tortfeasor*) conjuntamente con la tercera persona y tercero demandante. La responsabilidad del patrono es una absoluta, sin consideración a su negligencia y prescindiendo de ésta, y dicha responsabilidad objetiva es la única que le obliga, fuere él negligente o no. La reclamación o remedio del obrero contra su patrono es únicamente por los beneficios estatutarios; su reclamación contra el tercero es por daños. Ambas razones de pedir son en derecho de distinta categoría y no pueden engendrar una responsabilidad legal *en común.* (⁴)

Aparte del concepto depurado, hay un fundamento más simple de llano sentido común, también tomado en cuenta. Permitir la demanda de tercero equivaldría a que se hiciera de manera indirecta lo que directamente el Legislador ha vedado que se haga. Sería traer a consideración la negligencia

(³) Aunque la norma de la ley común inglesa prevaleciente en los Estados y en la jurisdicción federal ha sido la de no reconocer—en ausencia de legislación—el derecho de un co-causante del daño a exigir que otro co-causante contribuya al pago de la indemnización; véase: *Halcyon Lines* v. *Haenn Ship. Corp.,* 342 U.S. 282, 285; y aunque este Tribunal tiene declarada y establecida la responsabilidad solidaria de cada co-causante hacia el perjudicado—*Prado* v. *Quiñones,* 78 D.P.R. 322 (1955); *Rivera* v. *Great American Indemnity Co.,* 70 D.P.R. 825 (1950); *Cruz* v. *Frau,* 31 D.P.R. 92 (1922); *Cubano* v. *Jiménez,* 32 D.P.R. 167 (1923)—en *García* v. *Gobierno de la Capital,* 72 D.P.R. 138 (1951), adoptamos aquí la norma de la "contribución". Esta norma, de casos ordinarios, no puede regir en situaciones como las del de autos por razón misma del Art. 20.

(⁴) Larson: *The Law of Workmen's Compensation,* (1961) Vol. 2, págs. 230 y ss. y Suplemento al Corriente, (1963). Véanse: *American Mut. Liability Ins. Co.* v. *Matthews,* 182 F.2d 322 (2d Cir. 1950); *Slattery* v. *Marra Bros.,* 186 F.2d 134 (2d Cir. 1950), *cert.* denegado, 341 U.S. 915.

del patrono por la puerta trasera de una demanda de tercero, y hacerlo responsable en daños por tal negligencia.

La recurrente argumenta que su demanda de tercero contra el patrono se basa "en una excepción jurisprudencial" a la inmunidad del patrono. Nos dice que su demanda de tercero no se basa en el derecho a reclamar "contribución" de una parte cuando ésta ha sido negligente conjuntamente con otra en la causa del daño, sino que su derecho a reclamar contra tercero se basa "en el derecho a ser 'indemnizado' en la violación de un derecho separado e independiente del patrono hacia un tercero impuesto expresa e implícitamente por ley." Y explica que su derecho a reclamar del patrono "no es exactamente por daños sino por el derecho a ser reintegrado o 'indemnizado' no por razón de las lesiones del obrero asegurado y sí por virtud de la violación de una obligación o deber separado e independiente del patrono hacia el tercero".

■ No estamos convencidos, después de estudiar las autoridades que nos presenta la recurrente, que exista una "excepción jurisprudencial" a la inmunidad del patrono de general aceptación. Repetimos como se dijo al principio, que el criterio doctrinal prevaleciente es que dicha inmunidad estatutaria no puede disolverse a través del medio indirecto de la demanda de tercero. Aparte del hecho de que la distinción técnica entre los conceptos de "distribución" y de "indemnización" a veces y para todos los efectos prácticos no tiene más espesor que el del filo de una navaja, el caso de *American District Telegraph Co.* v. *Kittleson*, 179 F.2d 946 (8th Cir. 1950), que daría algún apoyo a la posición de la recurrente, se resolvió a base de un principio que no rige en nuestro ordenamiento civil, que tampoco parece haber tenido general aceptación; a base de la presunción de una responsabilidad *implícita* de ley en que un co-causante del daño viene a responder a otro co-causante si la negligencia del primero fue la principal o de carácter primaria, y la del segundo fue secundaria. Otros casos invocados o son casos de

almirantazgo en donde imperan particulares normas propias de esa esfera de derecho, o el alegado derecho de "indemnización" se basa en una *relación contractual* o intervienen estatutos que disponen la relación de responsabilidad recíproca entre dos co-causantes en común de un daño. Larson, citado por la recurrente sobre el particular hace una exposición comprensiva de la materia, obra citada, a las págs. 231 y ss. Sin embargo, el propio Profesor Larson entiende que hay mucho de ficción y artificialidad en esas distinciones y aconseja, cual es lo más propio, que ese es problema para el Legislador y no para la especulación de las cortes. Véanse: casos antes citados y *Royal Indem. Co.* v. *Southern Cal. Petroleum Corp.* (N.M.), 353 P.2d 358 en donde se dijo francamente que el remedio exclusivo que da el estatuto de compensación contra el patrono destruye la acción del derecho común de "indemnización"; *Williams Brothers Lumber Co.* v. *Meisel* (Ga.), 68 S.E.2d 384; *Farren* v. *New Jersey Turnpike Authority* (N.J.), 106 A.2d 752; *Hunsucker* v. *High Point Bending & Chair Co.* (N.C.), 75 S.E.2d 768; *Urda* v. *Pan American World Airways*, 211 F.2d 713 (5th Cir. 1954), en donde habiendo muerto el empleado en Brasil en el curso del trabajo y habiendo su viuda recibido compensación bajo el estatuto de Florida de compensaciones a obreros, una corte Federal rechazó la causa de acción en daños de la viuda bajo el principio de *"lex loci delicti"* que ella tenía según la ley brasileña, fundándose en que el estatuto de Florida daba un remedio exclusivo contra el patrono.

Sea buena o eficaz la distinción o no, o rija aquí o no el principio bajo la ley común de "indemnización" o la presunción de la negligencia primaria o secundaria, es innegable que bajo cualquiera de los conceptos que se invocan o bajo cualquier otro concepto en que pueda traerse al patrono, en el fondo estaría siempre el hecho del cual no podría prescindirse, de que cualquier responsabilidad impuesta al patrono como tercero demandado, sea por daños propiamente, por "contri-

bución" o por "indemnización", tendría su origen en una muerte declarada accidente del trabajo. No vamos a abrirle una grieta al sistema compensatorio mediante una "excepción jurisprudencial" y en todo caso preferiblemente que se manifieste el Legislador.

*La sentencia que desestimó sumariamente la demanda de tercero en este caso estuvo apropiada, y se confirmará.*