TEXTO COMPLETO DE LA SENTENCIA
Mediante un recurso de certiorari, acude ante nos Albañilería M.O., Inc. ("Albañilería"), solicitando que revoquemos una resolución dictada por el Tribunal de Primera Instancia, Sala Superior de Carolina, que declaró no ha lugar una moción de desestimación o sentencia sumaria que Albañilería presentó para disponer de una *1118 acción de daños y perjuicios presentada por familiares de un antiguo obrero, fallecido en un accidente del trabajo. Como Albañilería era, a la fecha del accidente, un patrono asegurado al amparo de la Ley del Sistema de Compensaciones por Accidentes en el Trabajo, expedimos el auto y desestimamos la acción de daños y perjuicios de autos.
I
Bienvenido Vega Toledo ("Vega Toledo") trabajaba como albañil para Albañilería en la construcción del proyecto de viviendas Veredas del Mar, en el sector Las Picúas del Barrio los Colobos-Zarzal del Municipio de Río Grande. El 6 de octubre de 1998, Vega Toledo falleció a causa de un accidente que sufrió mientras realizaba sus labores de albañilería en el proyecto Veredas del Mar.
En la decisión de 27 de diciembre de 1999 (99-34-01172-6), el Administrador del Fondo del Seguro del Estado concluyó lo siguiente:

"Que el día del accidente, el occiso estaba trabajando en unos plafones. Que tuvo que cruzar un muro en . un tercer piso para poner una alfagía [sic] al vuelo de la estructura. Que la puso, y por algún motivo perdió el equilibrio cayendo del balcón (que no tenía barandas) de espaldas sobre un "digger" que estaba en la parte de abajo del edificio.

Se determinó como causa de muerte la de "Severo Trauma Corporal" (Véase informe Médicom Forence [sic], Autopsia # 3682-98 del 6 de octubre de 1998.). ” [Apéndice del recurso de certiorari, anejo El, pág. 20.]
En la decisión del Administrador del Fondo del Seguro del Estado se concluyó que la muerte de Vega Toledo fue como consecuencia de un accidente del trabajo. Por lo tanto, el accidente estaba cubierto por la Ley del Sistema de Compensaciones por Accidentes del Trabajo. Se declararon como beneficiarios la viuda de Vega (Cecilia Peña Rivera), tres de sus hijos (Javier Vega Peña, Myckol Vega Peña y Ruth Vega Peña), así como su madre, Natalia Toledo Marín. También se ordenó que se le pagara a los dependientes la compensación estatutaria correspondiente.
El 5 de octubre de 1999, Peña, Anthony Vega Peña (hijo de Vega), Javier, Mickol, Ruth y Cheylinette Ventura Santana (nuera de vega), presentaron una acción de daños y perjuicios contra Albañilería y su aseguradora en el Tribunal de Primera Instancia, Sala Superior de Carolina. En la misma se reclamó que se condenara a los demandados a pagar una indemnización total de $3,150,000.00 en concepto de daños y angustias mentales, lucro cesante, y otros daños sufridos a causa de la muerte de Vega Toledo.
El 3 de enero de 2000, Albañilería presentó su contestación a la demanda. En la misma, Albañilería alegó como defensa que era un patrono asegurado con la Corporación del Fondo del Seguro del Estado en la fecha en que ocurrió el accidente de Vega Toledo. Por lo tanto, Albañilería alegó que los demandantes-recurridos carecían de una causa de acción en su contra.
El 7 de junio de 2000, Albañilería presentó una moción de desestimación o sentencia sumaria. En la misma, Albañilería volvió a alegar que los demandantes-recurridos carecían de una causa de acción en su contra, porque Albañilería era un patrono asegurado con la Corporación del Fondo del Seguro del Estado en la fecha en que ocurrió el accidente de Vega Toledo. Con la moción de desestimación o sentencia sumaria, Albañilería acompañó copia de su póliza de seguro del Fondo del Seguro del Estado y copia de la decisión del Administrador del Fondo del Seguro del Estado (99-34-01172-6) de 27 de diciembre de 1999.
El 15 de agosto de 2000, los demandantes-recurridos presentaron una moción en oposición a la desestimación o sentencia sumaria solicitada por Albañilería. En la misma alegaron que la muerte de Vega Toledo se debió a la exclusiva negligencia crasa del patrono al no proveer medidas de seguridad, tales como vallas, barandas o ameses, en el edificio donde ocurrió el accidente. Según ellos, tal falta de seguridad *1119 constituía una negligencia crasa de tal naturaleza que podría considerarse como una actuación intencional por parte de Albañilería.
El 16 de agosto de 2000, el Tribunal de Primera Instancia declaró no ha lugar la moción de desestimación presentada por Albañilería. Además, el 21 de septiembre de 2000, el Tribunal de Primera Instancia dictó una resolución en la que declaró no ha lugar la moción de sentencia sumaria presentada por Albañilería. En esta última resolución, el Tribunal de Primera Instancia (Hon. Etienne C. Badillo Anazagasti, Juez) resolvió que necesitaba "solicitar el desfile de prueba para determinar la inexistencia de intención o presunción de intención por la falta de diligencia razonable que se exige en esta clase de trabajo de alto riesgo para la vida." Apéndice VII del recurso de certiorari, pág. 34.
No conforme con lo resuelto por el Tribunal de Primera Instancia, Albañilería oportunamente acudió ante nos mediante un recurso de certiorari. En el mismo, Albañilería alegó que el tribunal recurrido erró al no desestimar la demanda en su contra, por haber sido un patrono asegurado con la Corporación del Fondo del Seguro del Estado en la fecha en que ocurrió el accidente de Vega Toledo. Evaluada la solicitud de certiorari, emitimos una orden para que los demandantes-recurridos mostraran causa por la cual no debiéramos acceder a lo solicitado por Albañilería. Con el beneficio de la comparecencia de los demandantes-recurridos, nos encontramos en posición para resolver.
II
La Ley Núm. 45 de 18 de abril de 1935 (11 L.P.R.A. sec. 1 y ss.), según enmendada y mejor conocida como la Ley del Sistema de Compensaciones por Accidentes del Trabajo, establece un esquema de seguro compulsorio dirigido a proveerle a los obreros que sufren alguna lesión o enfermedad que ocurra en el curso del trabajo y como consecuencia del mismo, un remedio rápido, eficiente y libre de las complejidades de una reclamación ordinaria de daños. De esta manera se le provee de inmediato al obrero lesionado, apoyo económico y tratamiento médico adecuado y, además, coloca sobre los patronos la carga del sostenimiento financiero del sistema. A cambio de esta protección ofrecida por la Ley Núm. 45, id., el obrero renuncia a su derecho de instar contra el patrono asegurado la acción de daños que emana del acto negligente que ocasionó dichos daños. Segarra Hernández v. Royal Bank de Puerto Rico, Opinión de 1 de abril de 1998, 98 J.T.S. 37, pág. 748; Pacheco Pietri y otros v. E.L.A. y otros, 133 D.P.R. 907, 914-915 (1993). De esta manera se alienta a que todo patrono se asegure y se permite, a la vez, que el sistema obtenga los recursos necesarios para ser efectivo. Cortijo Walker v. Fuentes Fluviales, 91 D.P.R. 574, 579 (1964).
La Ley Núm. 45, supra, surgió como remedio de justicia social para la indefensión del trabajador en un naciente régimen industrial que conjugaba la libre aceptación de un trabajo, conocidas la peligrosidad del empleo o las precarias condiciones de seguridad ofrecidas por el patrono, con la asunción del riesgo por el obrero, sin acción reparadora de clase alguna. Para un hombre impulsado por la urgente necesidad de atender a la subsistencia de su familia, y a la suya propia, la aceptación de un trabajo era acto en que 'su pobreza, y no su voluntad, consentía'.
Ruiz Díaz v. Vargas Reyes, 109 D.P.R. 761, 763 (1980).
Si el obrero sufría un accidente en su empleo por culpa de la negligencia de su patrono, a causa de grandes desventajas económicas en su contra y la imputación de su propia negligencia o descuido como defensa del patrono, muchas veces el obrero o sus familiares no obtenían compensación alguna por parte de su antiguo patrono. Por ende, muchas veces terminaban en una mayor situación de pobreza y desamparo. Cortijo Walker v. Fuentes Fluviales, supra, págs. 578-579. Ante esta situación, el legislador decidió aprobar un sistema social de responsabilidad objetiva, en el cual todo obrero lesionado a causa de su empleo, renuncia a una posible acción de daños en contra de su patrono, a cambio de una módica, pero segura compensación estatutaria. Id.; Santiago Hodge v. Parke Davis Co. 126 D.P.R. 1, 9 (1990).
*1120 El Artículo 18 de la Ley Núm. 45, supra sec. 21, establece lo siguiente:

"§ 21. Exclusividad del remedio provisto

Cuando el patrono asegure sus obreros y empleados de acuerdo con el presente Capítulo, el derecho aquí establecido para obtener compensación será el único remedio en contra del patrono, aun en aquellos casos en que se haya otorgado el máximo de las compensaciones o beneficios de acuerdo con el mismo; pero en el caso de accidentes, enfermedades o muertes de los obreros o empleados no sujetos a compensación de acuerdo con este Capítulo, la responsabilidad del patrono es y continuará siendo la misma que si no existiere el presente Capítulo."

A la luz de este estatuto, el Tribunal Supremo constantemente ha resuelto que contra un patrono asegurado no existe causa de acción alguna relacionada con la lesión o enfermedad sufrida por un obrero en su empleo, independientemente del grado de negligencia atribuible al patrono. Es decir, que la inmunidad que confiere la Ley de Compensaciones a los patronos asegurados, es de carácter absoluta. De este modo, el único remedio que tiene el obrero ante un accidente durante el curso del empleo cuando su patrono está asegurado, es el que provee la Ley de Compensaciones por Accidentes del Trabajo. Hernández Sánchez v. Bermúdez & Longo, S.E., Opinión de 14 de octubre de 1999, 99 J.T.S. 162, pág. 285; Segarra Hernández v. Royal Bank de Puerto Rico, supra, pág. 748; Santiago Hodge v. Parke-Davis Co., supra, págs. 8-9; Admor. F.S.E. v. Flores Hnos. Cement Prods., 107 D.P.R. 789, 792-793 (1978); Cortijo Walker v. Fuentes Fluviales, supra, págs. 579-580.
La excepción a la norma antes mencionada son las lesiones de los obreros producidas intencionalmente por los patronos asegurados, que no están relacionados con el empleo, y que la política pública imperante considera suficientemente importantes como para apartarse de la norma general que impide que el empleado demande al patrono. Estarían incluidos en la excepción, por ejemplo, los daños sufridos por un obrero por motivo de discrimen en su contra en el empleo. Hernández Sánchez v. Bermúdez & Lonqo, S.E., supra, pág. 285; Segarra Hernández v. Royal Bank de Puerto Rico, supra, págs. 748 y 750-751; Odriozola v. S. Cosmetic Dist. Corp., 116 D.P.R. 485, 501 (1985). ''En este supuesto, la posible conducta ilegítima, y en algunos contextos, posible conducta delictiva, no está inmune de una reclamación ordinaria de daños, ya que tal actuación no puede ser razonablemente considerada como una actuación vinculada al desempeño normal del empleo." Segarra Hernández v. Royal Bank de Puerto Rico, supra, págs. 748-749.
En este caso, los demandantes-recurridos alegan que Albañilería fue crasamente negligente al no proveer medidas de seguridad, tales como vallas, barandas o ameses, en el edificio donde ocurrió el accidente de Vega Toledo. Para ellos, la negligencia crasa de Albañilería fue de tal naturaleza que la misma constituyó un acto intencional.
Aun dando por cierta la alegada negligencia crasa por parte de Albañilería, la misma no constituye una excepción a la inmunidad patronal que lo cobija. Como explicamos anteriormente, contra un patrono asegurado no se reconoce causa de acción alguna relacionada con la lesión o enfermedad sufrida por un obrero en su empleo, independientemente del grado de negligencia atribuible al patrono. Hernández Sánchez v. Bermúdez & Longo, S.E., supra, pág. 285; Segarra Hernández v. Royal Bank de Puerto Rico, supra, pág. 748; Santiago Hodge v. Parke Davis Co., supra, pág. 8; Admor. F.S.E. v. Flores Hnos. Cement Prods., supra, págs. 792-793 (1978); Cortijo Walker v. Fuentes Fluviales, supra, págs. 579-580.
En este caso, no se le imputan al patrono actos intencionales no relacionados con el empleo. Por consiguiente, ninguna ley permite demandar al patrono. Por lo tanto, procedía dictar sentencia sumaria a favor del patrono. El derecho no reconoce la causa de acción instada por los demandantes-recurridos.
La sentencia sumaria es un mecanismo procesal extraordinario que tiene el propósito de facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales y,
*1121 por tanto, no ameritan la celebración de un juicio en su fondo. Hernández Villanueva v. Hernández, Opinión de 27 de enero de 2000, 2000 J.T.S. 26, pág. 608. El tribunal dictará una sentencia sumaria solamente cuando: (1) el promovente ha establecido su derecho con claridad, (2) el tribunal tiene ante sí la verdad de todos los hechos pertinentes, y (3) ha quedado demostrado que el promovido no puede prevalecer bajo ningún supuesto de hechos. Id.; Pérez Rosado v. El Vocero de Puerto Rico, Inc., Opinión de 11 de octubre de 1999, 99 J.T.S. 160, pág. 266.
En conclusión, los demandantes-recurridos carecen de una causa de acción contra Albañilería por la muerte de Vega Toledo mientras trabajaba. Como esta controversia es una cuestión de derecho abordable a través de una sentencia sumaria, erró el Tribunal de Primera Instancia al no desestimar la presente acción de daños y perjuicios en contra de Albañilería.
III
Por los fundamentos que anteceden, se expide el auto de certiorari y se desestima la demanda de autos contra Albañilería M.O., Inc.
Lo acordó y ordena el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General