EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis D. López Cotto, Jessica Meletiche Hernández por sí y en representación de la SLG<br><br>Peticionarios<br><br>v.<br><br>Western Auto of Puerto Rico, Inc.; Western Auto Supply Company; Advance Stores Company, Inc.; Compañías de Seguro A, B, C<br><br>Recurridos | Certiorari<br><br>2007 TSPR 94<br><br>171 DPR ____ |

Número del Caso: CC-2006-248

Fecha: 17 de mayo de 2007

Tribunal de Apelaciones:

      Región Judicial de Bayamón Panel VIII

Juez Ponente:

      Hon. Guillermo Arbona Lago

Abogados de la Parte Peticionaria:

      Lcdo. Eric A. Tulla
      Lcdo. Ángel R. Jiménez Rodríguez
      Lcdo. Nelson Pérez Domínguez

Abogados de la Parte Recurrida:

      Lcdo. Rafael E. Aguiló-Vélez
      Lcda. Elizabeth Pérez Lleras

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis D. López Cotto, Jessica
Meletiche Hernández por si y
en representación de la SLG

    Peticionarios

        v.                             CC-2006-248        CERTIORARI

Western Auto of Puerto Rico,
Inc.; Western Auto Supply
Company; Advance Stores
Company, Inc.; Compañías de
Seguro A, B, C

    Recurridos

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 17 de mayo de 2007

Luis D. López Cotto era técnico automotriz en la tienda Western Auto del Centro Comercial Santa María Plaza. El baño del taller de mecánica del referido negocio se prestaba para que los empleados practicaran bromas puesto que la cerradura se encontraba en el exterior de la puerta. Así, los empleados solían encerrar a sus compañeros de trabajo en dicho baño. Alegadamente, López Cotto, entre otras personas, <u>había notificado a la gerencia sobre la situación, pero nada se hizo al respecto</u>.

El 21 de noviembre de 2003, empleados de Western Auto, <u>alegadamente entre ellos un supervisor</u>, decidieron gastarle una broma a

López Cotto. Una vez éste entró al baño, sus compañeros de trabajo atravesaron un tubo y una cadena por la cerradura exterior de la puerta y colocaron una caja de herramientas frente a ella, encerrando de esta manera a López Cotto en dicho baño. Durante aproximadamente siete (7) minutos López Cotto solicitó lo dejaran salir del baño; como respuesta, sus compañeros le vaciaron el contenido de un extintor de fuego por debajo de la puerta. Cuando López pudo salir del baño, le notificó a la supervisora de turno, Sra. Lucía Nieves, lo sucedido.

Consecuentemente, López Cotto fue hospitalizado por los hechos acontecidos. Fue referido a la Corporación del Fondo del Seguro del Estado ("CFSE"). En la CFSE, López Cotto recibió tratamiento médico a manera de descanso, diagnosticándosele daño pulmonar permanente y desorden de estrés postraumático ("post-traumatic stress disorder").

Al momento de los hechos Western Auto era un <u>patrono asegurado</u> bajo la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. § *et. seq* (en adelante "la Ley"). Mediante resolución de 16 de julio de 2004 y notificada el 9 de septiembre de 2004, <u>el Administrador de la CFSE catalogó el incidente como un "accidente de trabajo", ordenando la compensación correspondiente bajo la Ley</u>.

En el entretanto, el 17 de noviembre de 2004, la Sra. Jessica Meletiche Hernández en su carácter personal, y como

parte de la sociedad legal de gananciales compuesta por ella y López Cotto, radicó una demanda en daños y perjuicios ante la Sala Superior de Bayamón del Tribunal de Primera Instancia contra Western Auto. En la misma, reclamó compensación por los daños experimentados como consecuencia del incidente del 21 de noviembre de 2003. Los emplazamientos se expidieron el mismo día que se presentó la demanda.

El 6 de junio de 2005 --fuera del término de seis meses de expedidos los emplazamientos-- la parte demandante solicitó del Tribunal de Primera Instancia una prórroga de 60 días para diligenciar los emplazamientos. La razón que adujo para justificar su demora en emplazar a la parte demandada fue que, alegadamente, no había recibido notificación final y firme sobre la determinación del Administrador de la CFSE, lo cual constituía un detalle crucial para saber si debía retar dicha determinación[1]; añadió que, al no contar con dicha resolución final y firme, no podía determinar si debía incluir a López como demandante. Según una certificación que emitió la CFSE el 22 de junio de 2005, la notificación de la resolución de la CFSE de 9 de septiembre de 2004 se había enviado a una dirección incorrecta.

---

[1] Valga aclarar que de la propia faz de la demanda surge que la parte demandante conocía sobre la determinación de la CFSE, la cual calificó el incidente como "accidente en el empleo".

El 7 de julio de 2005, la parte demandante presentó una demanda enmendada. En ella, se incluyó a López como demandante y, por primera vez, se alegó que la CFSE había errado en su determinación de que lo ocurrido el 21 de septiembre de 2003 configuraba un "accidente de trabajo" compensable bajo la Ley. No se expidieron nuevos emplazamientos. Concedida la prórroga antes mencionada por el Tribunal de Primera Instancia, la parte demandante finalmente emplazó a Western Auto el 8 de julio de 2005 con los emplazamientos originales, pero utilizando copia de la demanda enmendada.

El 28 de julio de 2005, Western Auto presentó una moción de desestimación de la demanda al amparo de las disposiciones de la Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III.[2] En dicha moción levantó su <u>inmunidad como patrono asegurado</u> a tenor con la Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra*, la cual

---

[2] Dicha Regla dispone:

"Toda defensa de hechos o de derecho contra una reclamación en cualquier alegación, ya sea demanda, reconvención, demanda contra coparte, o demanda contra tercero, se expondrá en la alegación respondiente que se haga a las mismas, en caso de que se requiera dicha alegación respondiente, excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante moción debidamente fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable."

provee exclusividad de remedio para el obrero accidentado en el transcurso de su empleo; además, planteó que el Tribunal de Primera Instancia no debió haber prorrogado el término para emplazar, puesto que la parte demandante solicitó dicha prórroga fuera del término de seis meses de emitidos los emplazamientos en contravención con la Regla 4.3 de Procedimiento Civil, 32 L.P.R.A Ap. III. Puntualizó, además, que la razón que expuso la parte demandante para justificar la prórroga no constituía justa causa a tenor con la Regla 4.3, *supra*. Finalmente, alegó que la causa de acción de López estaba prescrita.

El Tribunal de Primera Instancia declaró No Ha Lugar la moción de desestimación presentada por la parte demandada. Dicho foro judicial entendió que la parte demandante podría tener una causa de acción --esto es, que los hechos alegados podrían constituir <u>actuaciones intencionales</u> de parte de Western Auto-- y que, por tal razón, era preciso que se dilucidara el asunto en sus méritos; añadió que tenía entera discreción a la hora de considerar si existía justa causa para prorrogar el término de emplazamiento, aun después de pasados los seis meses que dispone la Regla 4.3 de Procedimiento Civil, *supra*. En cuanto al planteamiento de que la acción de López estaba prescrita, concluyó que a tenor con la Regla 13.3 de Procedimiento Civil, *supra*, al enmendarse la demanda para incluir a López, dicha reclamación se retrotrajo a la fecha original de

presentación de la demanda por parte de la Sra. Meletiche y la sociedad legal de gananciales compuesta por ellos.

Inconforme, Western Auto acudió vía *certiorari* ante el Tribunal de Apelaciones, aduciendo que el Tribunal de Primera Instancia había errado al:

> …(1) determinar que existía justa causa para prorrogar el término para el diligenciamiento de los emplazamientos aun cuando la misma fue solicitada transcurrido el término de seis meses dispuesto en la Regla 4.3 (b) de Procedimiento Civil, *supra*;
> …(2) no desestimar la demanda enmendada aun cuando Western Auto está cobijada por la inmunidad patronal dispuesta en la Ley del Sistema de Compensaciones por Accidentes del Trabajo y,
> …(3) no desestimar la reclamación de López no empece la misma estar prescrita.

El Tribunal de Apelaciones <u>revocó</u> al tribunal de instancia. Determinó el foro apelativo intermedio que los hechos alegados en la demanda no derrotan la inmunidad patronal establecida en la Ley del Sistema de Compensaciones por Accidentes del Trabajo (LSCAT). Entendió que el señor López Cotto, su esposa y la sociedad legal de gananciales en cuestión, no pueden acudir a los tribunales a cuestionar la inmunidad patronal, luego de aceptar la decisión de la CFSE y recibir sus beneficios. Entendió además que, a lo sumo, los hechos alegados constituyen negligencia crasa; lo cual no derrota la inmunidad patronal. Al así resolver, no entró a discutir los errores señalados por Western Auto respecto al emplazamiento tardío y la prescripción de la reclamación del señor López Cotto.

La parte demandante acudió ante este Tribunal ––mediante recurso de *certiorari*–– aduciendo que el Tribunal de Apelaciones erró al desestimar la demanda contra Western Auto. Formuló lo siguientes errores:

> …(1) determinar que Western Auto tiene inmunidad de toda posible causa de acción;

> …(2) determinar que la parte peticionaria está impedida de presentar una causa de acción en contra de Western Auto por sus actos intencionales después de ésta haber recibido los beneficios de la CFSE y,

> …(3) al hacer una determinación de falta de intención en el abstracto, sin tan siquiera permitir que se celebrara un descubrimiento de prueba, ni llevar a cabo una vista evidenciaria en el Tribunal de Primera Instancia en la que la peticionaria pudiera demostrar la intencionalidad de los actos de Western Auto.

Le concedimos a la parte recurrida el término de veinte días para que mostrara causa por la cual no debíamos expedir el auto solicitado y dictar sentencia modificatoria de la emitida por el Tribunal de Apelaciones <u>a los efectos de reinstalar la causa de acción de la Sra. Meletiche</u>. Contando con la comparecencia de las partes, procedemos a resolver.

I

La Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra*, provee ciertos remedios en beneficio de obreros que durante el curso del empleo sufren alguna lesión, accidente o enfermedad. A estos fines, la Ley establece un seguro compulsorio al cual se tienen que acoger los patronos para así proveerles a sus empleados un sistema

expedito y eficiente en caso de que estos se accidenten o se lesionen durante el transcurso del empleo. También, provee compensación en caso de que el obrero muera a raíz de un accidente en el empleo. A estos efectos, la Sección 3 de la Ley establece los beneficios a los cuales tiene derecho el obrero accidentado o lesionado, así como los requisitos para cualificar para dichos beneficios y la manera en que habrá de recibirlos una vez cualifica.

El propósito de esta Ley es proteger al obrero. Partiendo de la premisa de que el patrono está debidamente asegurado, la Ley provee un mecanismo mediante el cual el obrero que sufre un accidente en el transcurso de su empleo puede recobrar beneficios de forma rápida y certera. De esta manera, cuando el obrero acude a la Corporación del Fondo del Seguro del Estado <u>no</u> viene obligado a probar culpa o negligencia como condición para recibir compensación. Por razones de política pública la Ley crea un contrato social

> que consiste en el acomodo justo y equitativo de los intereses de patronos y empleados, donde ambos reciben importantes beneficios a cambio del libre ejercicio de sus derechos o prerrogativas tradicionales. Los trabajadores ceden en cierta medida su derecho a demandar a su patrono a cambio de un beneficio que puede eventualmente resultar menor, pero que es uno seguro, inmediato y cierto. 11 L.P.R.A. sec. 1a.

Es por esta razón que la política pública del ELA continúa favoreciendo la responsabilidad única que promulga la Ley. A tales efectos, el Artículo 21 de la Ley, *supra*, dispone que "cuando el patrono asegure a sus obreros y

empleados […] el derecho aquí establecido para obtener compensación <u>será el único remedio disponible</u>". (Énfasis nuestro.) Por ende, la ley crea una inmunidad patronal absoluta, lo cual significa que el obrero accidentado o lesionado no puede demandar a su patrono en daños y perjuicios sin importar el grado de negligencia atribuible a éste. Véase <u>Nieves Dairy Farm</u> v. <u>F.S.E.</u>, res. el 24 de septiembre de 2004, 2004 TSPR 155; <u>Sevilla et. als.</u> v. <u>Mun. De Toa Alta</u>, 159 D.P.R. 696 (2003); <u>Toro, Nieves</u> v. <u>Policía de P.R.</u>, 159 D.P.R. 339 (2003); <u>Guzmán y otros</u> v. <u>De Jesús</u>, 155 D.P.R. 296 (2001); <u>Hernández</u> v. <u>Bermúdez & Longo, S.E.</u>, 149 D.P.R. 543 (1999); <u>Cátala</u> v. <u>F.S.E.</u>, 148 D.P.R. 94 (1999).

Más aun, el obrero que se acoge a los beneficios de la CFSE elimina la posibilidad de entablar una causa de acción en daños y perjuicios en contra de su patrono. Dicho de otro modo, no se trata de una defensa personal que tiene el patrono contra las reclamaciones de daños y perjuicios que insten sus empleados accidentados, sino que hay una inexistencia total de causa de acción en contra del patrono por los "accidentes de trabajo" que el Fondo compensa. <u>Alonso García</u> v. <u>Flores Hmnos. Cement Products, Inc.</u>, 107 D.P.R. 789 (1978).

Sin embargo, la Ley y sus beneficios no siempre se activan. Existen varias <u>excepciones</u> que impiden que un obrero recobre a tenor con la Ley, teniendo entonces disponible una acción en daños y perjuicios contra su

patrono. Por ejemplo, hemos resuelto que los <u>actos</u> <u>intencionales</u> del patrono que le causen daño a un empleado <u>no</u> son compensables bajo la Ley. <u>Soc. de Gananciales</u> v. <u>Royal Bank de Puerto Rico</u>, *supra*; <u>Odriozola</u> v. <u>Cosmetic Dist. Corp.</u>, *supra*. "En este supuesto, la posible conducta ilegítima --y en algunos contextos posible conducta delictiva-- [del patrono] no está inmune de una reclamación ordinaria de daños, ya que tal actuación no puede ser razonablemente considerada como una actuación vinculada al desempeño normal del empleo". <u>Soc. de Gananciales</u> v. <u>Royal Bank de Puerto Rico</u>, *supra*. También, las disposiciones de la Ley no le aplican al patrono no asegurado o que se encuentre atrasado en el pago de las primas. La Sección cinco (5) de la Ley, *supra*, enumera específicamente los accidentes exceptuados:

> No son accidentes compensables del trabajo y no darán por consiguiente, derecho a compensación al obrero o empleado o a sus beneficiarios de acuerdo con este capítulo, los que ocurren en las siguientes circunstancias:
>
> (1) Al tratar el obrero o empleado de cometer un delito o de lesionar a su patrono o a cualquier otra persona, o cuando voluntariamente se causare la lesión.
>
> (2) Estando el obrero o empleado embriagado, siempre que la embriaguez fuere la causa del accidente.
>
> (3) Cuando la imprudencia temeraria del obrero o empleado haya sido la única causa de la lesión.

Hemos expresado, en reiteradas ocasiones, que para que el patrono pueda levantar la defensa de inmunidad

exitosamente, tiene que existir un nexo causal entre el accidente y el empleo. Alonso García v. Comisión Industrial, 102 D.P.R. 689 (1974). Más específicamente, un accidente es compensable bajo las disposiciones de la Ley cuando: (a) provenga de cualquier acto o función del obrero; (b) sea inherente al trabajo o empleo del obrero, y (c) ocurra en el curso de éste. El requisito de que el accidente ocurra como consecuencia de ejecutar una función inherente al empleo significa que la lesión ocurra mientras el empleado u obrero realiza las labores normales de su puesto. Cátala v. F.S.E., *supra*; Admor., F.S.E. v. Comisión Industrial, 101 D.P.R. 56 (1973).

## II

En el presente caso no está en controversia el hecho de que el patrono Western Auto era un "patrono asegurado" bajo la citada Ley de Compensaciones por Accidentes del Trabajo. Un examen de los hechos que surgen del expediente del caso demuestran que, a lo sumo, lo único que se le puede imputar al mencionado patrono, en relación con el incidente acaecido, es el haber sido negligente al no haber corregido la situación de la cerradura del baño a pesar de haber sido, alegadamente, apercibido de la misma con anterioridad a la ocurrencia de los hechos. En esta clase de situaciones, de ordinario, el obrero no tiene causa de acción alguna contra su patrono. El argumento de los demandantes peticionarios --a los efectos de que López

Cotto fue víctima de un acto intencional del patrono-- es totalmente inmeritorio. Como expresáramos anteriormente, lo más que se le puede imputar a Western Auto es que fue negligente.

Ahora bien, en la demanda radicada los demandantes alegan, "en la alternativa", que Western Auto es responsable por los actos intencionales de los compañeros de López Cotto. No tienen razón. En cuanto a este tema en específico, el comentarista Larson sostiene que cuando la persona que intencionalmente lesiona al empleado no es el patrono, en su capacidad personal o una persona que es "alter ego" del patrono o corporación --en cuyas situaciones se le puede atribuir al patrono la intencionalidad de la actuación de esas personas-- y si es un mero empleado o supervisor, no procede la acción en daños contra el patrono por los actos cometidos por sus empleados. A. Larson, The Law of Workmen's Compensation, Newark, Matthew Bender & Co., Inc., 2006, Vol. 6, págs. 103-134.4.

## III

Por último, nos resta determinar si la esposa de López Cotto --la codemandante Jessica Meletiche Hernández-- está, o no, impedida de demandar, en daños y perjuicios, a Western Auto en relación con los hechos ocurridos el 21 de noviembre de 2003.

A pesar de que en el pasado hemos intimado que la contestación a dicha interrogante es en la negativa, nunca hemos resuelto la misma en forma directa y específica. En Cortijo Walker v. Fuentes Fluviales, 91 D.P.R. 574 (1964), --caso en que estaba en controversia la procedencia de una demanda en daños y perjuicios, radicada por unos hermanos de un obrero fallecido en un accidente de trabajo, contra el patrono asegurado-- al determinar que la demanda era improcedente en derecho, debido a la inmunidad patronal que cobijaba al patrono, expresamos, a la página 578, que:

> Bajo el régimen de nuestro estatuto de Compensaciones por Accidentes del Trabajo, está aquí decidido que el obrero o empleado lesionado o sus beneficiarios, no pueden exigir resarcimiento al patrono bajo las normas de responsabilidad del derecho común, en nuestro caso, del Código Civil. La compensación que da el estatuto es el único resarcimiento del obrero o sus beneficiarios en cuanto a su patrono, siempre que el caso esté dentro del ámbito de la Ley. (Énfasis suplido.)

En Guzmán Acevedo v. De Jesús Rivera, 155 D.P.R. 296 (2001), este Tribunal resolvió que la esposa e hijos de un obrero lesionado en un accidente del trabajo que éste sufriera, no tienen causa de acción contra la compañía aseguradora del patrono asegurado --a pesar de las disposiciones del Artículo 20.030 del Código de Seguros, 26 L.P.R.A. sec. 2003, que establece la "acción directa" en nuestra jurisdicción contra una compañía aseguradora-- por razón de que la inmunidad patronal que cobija al patrono se extiende a su compañía aseguradora. Esto es, de manera indirecta, resolvimos en Guzmán Acevedo, ante, que la

esposa del obrero accidentado <u>no</u> tiene causa de acción contra el patrono asegurado.

Por otro lado, y en términos generales, reiteradamente hemos expresado que bajo "...el estado actual del derecho vigente no existe duda de que la <u>exclusividad</u> de remedio establecida en el Art. 20, *supra*, <u>es una de carácter absoluto que crea una inmunidad legal a favor de un patrono asegurado contra el ejercicio de cualquier otra acción</u>; en otras palabras, no existe causa de acción alguna." (Énfasis suplido.) <u>Admor. F.S.E.</u> v. <u>Flores Hnos. Cement Prods.</u>, 107 D.P.R. 789 (1978); <u>Cruz Rodríguez</u> v. <u>A.A.A.</u>, 101 D.P.R. 269, 270 (1973); <u>B.C.R. Co., Inc.</u> v. <u>Tribunal Superior</u>, 100 D.P.R. 754, 758 (1972); <u>Vda. de Andino</u> v. <u>A.F.F.</u>, 93 D.P.R. 170, 181 (1966); <u>Cortijo Walker</u> v. <u>A.F.F.</u>, 91 D.P.R. 574, 578 (1964); <u>Montes</u> v. <u>F.S.E.</u>, 87 D.P.R. 199, 208 (1964); <u>Báez Vega</u> v. <u>E.L.A.</u>, 87 D.P.R. 67, 76 (1963); y <u>De Jesús</u> v. <u>Osorio</u>, 65 D.P.R. 640, 642 (1946).

Somos del criterio que permitir la acción de daños de la esposa, en esta clase de situaciones, <u>derrotaría</u> el propósito o intención que tuvo el legislador al aprobar la citada Ley de Compensaciones por Accidentes del Trabajo, cual fue la de establecer un seguro compulsorio, obligatorio para los patronos, que protege a los obreros pero que, a cambio de ello, constituye el único remedio procedente contra el patrono. Por consiguiente, resolvemos que resulta improcedente en derecho, como consecuencia directa de la inmunidad patronal, la acción en daños

radicada por la esposa de un obrero contra el patrono de éste en relación con un accidente del trabajo sufrido por dicho obrero.[3]

Procede, en consecuencia, <u>confirmar</u> la sentencia emitida en el presente caso por el Tribunal de Apelaciones.[4]

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[3] Larson es de la misma opinión al especificar que no existe la causa de acción para el cónyuge del empleado lesionado si la lesión ocurre dentro del marco de la ley. A. Larson, <u>The Law of Workmen's Compensation</u>, Newark, Matthew Bender & Co., Inc., 2006, Vol. 6, págs. 100-1, 1001-1 y 101-2.

[4] Nos hemos abstenido de discutir el señalamiento de error a los efectos de lo tardío del emplazamiento debido a que es norma reiterada en nuestro ordenamiento que "los tribunales tienen discreción para prorrogar el término provisto para diligenciar el emplazamiento por un período razonable, aun expirado el plazo de seis (6) meses, siempre y cuando la parte que lo solicita demuestre justa causa para ello y no haya abuso de discreción por parte del tribunal". <u>First Bank</u> v. <u>Inmob. Nac., Inc.</u>, 144 D.P.R. 901, 914 (1998); <u>Banco Metropolitano</u> v. <u>Berríos</u>, 110 D.P.R. 721 (1981).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis D. López Cotto, Jessica
Meletiche Hernández por si y
en representación de la SLG

    Peticionarios

        v.                         CC-2006-248    CERTIORARI

Western Auto of Puerto Rico,
Inc.; Western Auto Supply
Company; Advance Stores
Company, Inc.; Compañías de
Seguro A, B, C

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 17 de mayo de 2007

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión disidente. La Juez Asociada señora Rodríguez Rodríguez concurre en el resultado por entender que el Tribunal de Primera Instancia actuó sin jurisdicción al autorizar el emplazamiento de la parte demandada, por haber transcurrido el término de 6 meses desde que fueron expedidos los emplazamientos sin que se solicitara prórroga para emplazar, razón por la cual la demanda debió ser desestimada.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis D. López Cotto, Jessica
Meletiche Hernández por sí y
en Representación de la SLG
     Peticionarios

        vs.                 CC-2006-248     Certiorari

Western Auto of Puerto Rico,
Inc.; Western Auto Supply
Company; Etc.

     Recurridos

Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 17 de mayo de 2007.

El 19 de mayo de 2006 este Foro emitió una Resolución en el caso de autos, mediante la cual le concedimos un término a la parte recurrida Western Auto of Puerto Rico, para que mostrara causa por la cual no debíamos dejar sin efecto el impugnado dictamen del foro apelativo, que desestimó la demanda presentada antes por la Sra. Jessica Meletiche, esposa del trabajador que aquí nos concierne. Procurábamos reinstalar así la causa de acción de dicha esposa, como lo había hecho antes correctamente el foro de instancia.

Nuestra Resolución fue emitida con plena deliberación. Es decir, no obstante conocer a

cabalidad la trillada norma sobre la inmunidad patronal al amparo de la Ley de Compensaciones por Accidentes del Trabajo, los miembros de este Tribunal que participamos en la consideración inicial de este asunto estuvimos **todos** de acuerdo entonces en atender el recurso de autos median te el mecanismo procesal de una orden de mostrar causa. Lo hicimos sencillamente porque nos pareció que en este caso probablemente estaba presente una de las **excepciones** a la inmunidad patronal referida, a saber **cuando media una actuación intencional por parte del patrono**.

Pero ahora la mayoría del Tribunal, sorprendentemente despacha lo referente a dicha excepción con unas meras oraciones, citando para ello al comentarista Larson.

En este caso son **hechos incontrovertidos**: (1) que el patrono Western Auto **estaba apercibido** de que sus empleados solían encerrar a compañeros de trabajo en el baño del taller de mecánica; (2) que el día de los hechos, varios empleados del patrono, **incluso un supervisor**, encerraron a un compañero en dicho baño y le vaciaron el contenido de un extintor de fuego por debajo de la puerta; (3) que la referida conducta de dichos empleados le causó graves daños físicos y mentales al compañero, como era anticipable.

Frente a estos trágicos hechos, la mayoría ahora decreta que el patrono es inmune. Según la mayoría, ". . .a lo sumo, lo único que se le puede imputar al mencionado patrono. . . es haber sido **negligente** al no haber corregido la situación de la cerradura del baño. . .".

En mi criterio, la mayoría confunde el problema real del caso de autos. **Lo medular aquí no es si el patrono arregló o no la cerradura del baño**. Más bien, lo crucial es que el patrono hizo caso omiso de una reiterada conducta de sus empleados, incluso de un supervisor, de encerrar a otros empleados en el baño referido. **La indiferente dejadez del patrono frente a una repetida acción ilícita de sus empleados, que finalmente dio lugar a un incidente funesto**, **que antes nos movió a atender este recurso, ahora le parece a la mayoría del Tribunal que sólo constituye un mero acto de negligencia**. La contención, que antes nos pareció lo suficientemente seria como para considerar el recurso, de que aquí se le puede atribuir **intencionalidad al patrono**, ahora es "totalmente inmeritoria" para la mayoría. Ello, porque supuestamente el reputado comentarista Larson lo dice.

Sin embargo, el asunto no es tan sencillo como se relata en el dictamen mayoritario. Es cierto que el celebre jurista Larson señala, sobre el asunto que aquí nos concierne, que ". . .*when the intentional injury is committed by a co-employee the better rule is that an action in damages will not lie against the employer merely because the co-employee occupied supervisory status in relation to the claimant.*" A. Larson, *The Law of Workmen's Compensation*, Vol. 6, págs. 103-10 (2006). Pero también es cierto **-y la mayoría en su dictamen ni lo menciona-** que Larson dedica docenas de páginas a explicar cómo y porqué la norma aludida **está cambiando** en las jurisdicciones norteamericanas.

Larson, *id.*, págs. 103-10 a 103-39. En efecto, Larson explica en detalle que **al menos una docena de jurisdicciones estatales**[5] han variado ya sus normas para permitir acciones contra el patrono por actos intencionales de un compañero de trabajo cuando se trata de una **conducta u omisión que el patrono entendía con sustancial certeza que le causaría daño a algún empleado**. Esta óptica emergente está apoyada en gran parte por la postura sobre el particular de otro prominente jurista, W. Prosser. Veáse, *Handbook of the Law of Torts*, citado por Larson.

Resulta, pues, que la mayoría menciona de pasada un criterio de Larson, pero no detalla nada en su opinión del resto de lo indicado por Larson sobre el particular. Y como si esta incomprensible omisión fuera poco, la mayoría tampoco explica de modo alguno por qué es que la conducta del patrono en el caso de autos no constituye **una "actuación intencional"** suya. Ese es el asunto más importante y determinante de este caso, pero la mayoría guarda silencio sobre el mismo, tal como lo hace con el resto de la exposición de Larson sobre la cuestión que aquí nos concierne.

En mi criterio, tratamos aquí con una conducta que jurídicamente constituye una indudable actuación intencional, que debe generar responsabilidad. El patrono, estando plenamente consciente de un reiterado acto ilícito de sus empleados, hizo caso omiso de ello. Nuestra Ley de

---

[5] Los estados que tienen una nueva normativa son: Connecticut, Florida, Louisiana, New Jersey, North Carolina, Ohio, South Dakota, Texas, California, Michigan, Washington y West Virginia.

Compensaciones por Accidentes del Trabajo no define concretamente qué es un "acto intencional". Tampoco lo hemos hecho nosotros en la muy escasa jurisprudencia sobre el particular, que es extremadamente limitada en cuanto a este asunto se refiere. En efecto, la excepción a la norma básica de remedio exclusivo cuando ocurre un acto patronal intencional la establecimos escuetamente, en sólo una oración, en Odriozola v. S. Cosmetic Dist. Corp., 116 D.P.R. 485, 501 (1985). La hemos reiterado posteriormente, también de modo igualmente escueto, en Pacheco Pietri y Otros v. E.L.A. y Otros, 133 D.P.R. 907, 919, nota al calce #6, (1993); en Laureano Pérez v. Soto, 141 D.P.R. 77, 84 (1996); y, en Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178, 196 (1998). A pesar de que Larson dedica muchas páginas a examinar este asunto a fondo, en Puerto Rico hasta ahora no le habíamos dedicado más de unas oraciones al mismo. **La ponencia de la mayoría del Tribunal en el caso de autos no supera esta situación**.

Ante la ausencia de una definición normativa en nuestro ordenamiento jurídico sobre qué constituye el "acto intencional" referido, debemos tener en cuenta que según el propio Larson éste ocurre cuando para el patrono era sustancialmente cierto que un daño resultaría de dicho acto. El énfasis está en lo que el patrono podía prever con certeza.

Aquí el patrono, hizo caso omiso de la reiterada conducta ilícita de sus empleados, **la cual conocía**. No cabe duda de que actuó de modo irresponsable y en abandono de su

deber social. Era evidentemente previsible que el encierro forzado de varios empleados en el pequeño y limitante espacio de un baño le causaría cuando menos malestar y desasosiego a éstos. El patrono, pues, tenía la obligación social de requerirle a sus empleados que terminaran la práctica irresponsable y nociva de encerrar a otros empleados en el baño del taller. No lo hizo, por lo que su **omisión** permite imputarle jurídicamente haber incurrido en un acto intencional. Tal omisión constituye **"dejar de hacer una cosa necesaria"**, que "conlleva corrientemente la connotación. . . de grave falta moral". Véase, Pueblo v. Romero, 101 D.P.R. 404, 408 (1973).

Sobre todo en la situación aciaga que vive el país, este Tribunal le hace un flaco servicio, al condonar que un patrono ignore una reiterada conducta gravemente irresponsable de sus empleados. En mi criterio, no ejercemos cabalmente nuestra ingente función como máximo foro judicial del país al darle la espalda a una víctima de la maléfica "bromita" que aquí nos concierne. Como no comparto el visto bueno que la mayoría de tribunal le da a la cruda insensibilidad e irresponsabilidad patronal en el caso de autos, yo disiento.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO